**Albert Dwight RAINES**

v.

**UNITED STATES of America.**

**Crim. No. 75-166 (Civ. A. No. 77-266).**

United States District Court,
W. D. Pennsylvania,
Pittsburgh Division.

Aug. 3, 1977.

Albert Dwight Raines, pro se.

Blair A. Griffith, U. S. Atty., Edward J. Schwabenland, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION

MARSH, District Judge.

The defendant, Albert Dwight Raines, was convicted of bank robbery and assault jeopardizing lives. 18 U.S.C. § 2113(a), (d). Pursuant to 28 U.S.C. § 2255, he has moved the court to vacate his prison sentence of 15 years. The principal reason set forth in support of the motion is the usual accusation, after conviction, of ineffective assistance of counsel.[1] The other reasons are:

---

1. At defendant's arraignment on June 17, 1975, a public defender was appointed for his defense. On July 16, 1975, Attorney Morris Cohen, a privately retained counsel, entered his

1. "Prejudicial identification
2. Denial of speedy trial
3. Unconstitutional failure of prosecution to disclose to the defendant evidence favorable to the defendant."

▇ The defendant requests a hearing. However, section 2255 does not require a hearing when "the files and records of the case conclusively show that the prisoner is entitled to no relief—." The motion, records, files, affidavits, statement of Kevin L. Barden and the traverses filed are conclusive that an evidentiary hearing is not required and the motion to vacate will be denied. See Rules Governing Section 2255 Proceedings, Rules 7 and 8, Title 28 foll. § 2255.

The record discloses that the defendant was indicted on June 5, 1975, convicted by a jury on September 4, 1975, and sentenced on October 20, 1975. The Court of Appeals affirmed the conviction on October 12, 1976.

Among the contentions presented to the Court of Appeals by the defendant were:
1. Ineffective assistance of counsel.
2. Prejudicial identification.
3. Denial of speedy trial.

▇ Since the conviction was affirmed grounds 2 and 3 cannot be raised again pursuant to Section 2255. Consideration of contentions on direct appeal preclude reconsideration of the same contentions on a motion for postconviction relief. *Scott v. United States*, 545 F.2d 1116 (8th Cir. 1976); *Boeckenhaupt v. United States*, 537 F.2d 1182 (4th Cir. 1976); *Webb v. United States*, 510 F.2d 1097 (5th Cir. 1975); *Houser v. United States*, 508 F.2d 509, 514 (8th Cir. 1974).

The evidence of defendant's guilt was ample. In the morning of February 12, 1975, three lady tellers in the Ambridge Savings & Loan Association (bank) observed two black males enter shortly after 9:00 o'clock and robbed the bank. Each teller described the details of the robbery and each positively identified the defendant

Raines as one of the robbers. Each looked at the defendant from two to five minutes at close range in a well lighted room (Tr. pp. 29, 37, 44). Afterwards they were told to lie on the floor and then were herded into a vault and the door closed. The fourth teller, Joyce Johnson, was required to accompany the taller robber, Kevin L. Barden, to each cash drawer and stuff the money into a pillow case. (Tr. pp. 89–90). It was stipulated that $7611 was missing after the robbery (Tr. 86).

Duane C. Preston, Jr., was the F.B.I. agent in charge of the investigation. Attorney Morris Cohen, the defendant's retained counsel, educed from agent Preston on cross-examination that two other bank employees, Joyce Johnson and a secretary were present during the robbery and were not called as witnesses by the prosecution. He brought out that Joyce Johnson, the fourth teller, who was commandeered by Barden to stuff the money into a pillow case, could not identify Raines, and that the secretary who was made to lie on the floor by Barden (Tr. 89) was not shown the photographic displays by Preston which was strong evidence that she likewise could not identify Raines (Tr. pp. 72–73).

Raines refused to participate in a line-up. There was no evidence or suggestion that either Joyce Johnson or the secretary had refused to identify him or had identified another, thus distinguishing this case from the uncalled witnesses in *Moore v. United States*, 432 F.2d 730 (3rd Cir. 1970). Here, Raines' counsel capably elicited the fact that the two uncalled bank employees could not positively identify Raines. It was a reasonable tactical decision by counsel, absent impeaching elements present in Moore (*supra*), not to subpoena these employees of the bank to testify they could not identify Raines which had already been brought out, and then on cross-examination, reiterate the damaging details of the robbery. Their presence in the bank and their inability to identify Raines established by defense coun-

appearance for Raines and the public defender was permitted to withdraw. Attorney Cohen had previously represented Raines in Beaver

County, Pa., on a charge of sale of marijuana. See Cohen's affidavit.

sel was a well designed defense strategy to raise an adverse inference in the minds of the jury.

Each of the three teller witnesses recounted pre-trial photographic inspections. From one six-picture spread each selected Raines' picture as being one of the robbers. (Cf. *United States v. Hines,* 470 F.2d 225 (3rd Cir. 1972).

The F.B.I. agent, Preston, described his activities in investigating the case including exhibition of several photo-spreads to the four tellers separately. References to the pre-trial photographic identifications were made to buttress the in-court identifications of the three of them. "This has been a proper and strategically sound tactic for years." *United States v. Clemons,* 144 U.S. App.D.C. 235, 445 F.2d 711, 713 (1971). The value of such evidence was recognized in *Gilbert v. California,* 388 U.S. 263, 272 n. 3, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

In addition, Kevin Barden testified that he was one of the robbers; that Raines had suggested the robbery about one week prior thereto and both of them cased the bank two or three days later (Tr. pp. 102, 104–105); that Barden and Orlandis Lester also cased the bank a couple of days prior to the robbery (Tr. p. 89).[2] Barden testified that he and Raines entered the bank in the morning of February 12th and robbed it; that Lester drove the getaway car. Barden's account of the robbery fully corroborated the testimony of the three teller witnesses and the fact that Joyce Johnson was required to help him collect the money which probably accounted for her inability to identify Raines.

Barden had previously pled guilty to Count One of the indictment on August 28, 1975, and at that time implicated Raines. (Transcript of August 28, 1975 p. 18). The only promise made to Barden by the Government was that Count Two of the indictment would be dismissed after sentence, and any cooperation would be brought to the attention of the sentencing judge. (Transcript of August 28, 1975, pp. 8, 16–18).[3]

At the trial no evidence was offered tending to show that the prosecution knowingly allowed the use of perjured testimony.

■ Raines contends that he was denied his right to effective assistance of counsel as guaranteed by the Sixth Amendment by his trial counsel's failure to call his "friends" as alibi witnesses.

" 'The standard of adequacy of legal services as in other professions is the exercise of the customary skill and knowledge which normally prevails at the time and place.' *Moore v. United States,* 432 F.2d 730, 736 (3 Cir. 1970) (Footnotes omitted). The burden is on Hines to demonstrate that his counsel gave him inadequate representation. *United States v. Varga,* 449 F.2d 1280 (3 Cir. 1971)." *United States v. Hines; supra* at page 231.

We find that Raines has not met this burden and that the service rendered by Attorney Cohen on Raines' behalf was well within the range of normal adequacy.

The record shows that Raines had effective assistance of counsel. Obviously, the trial was not a sham, farce or mockery. As pointed out by the Court of Appeals there was no contention in the district court that defense counsel was ineffective or that Raines knew of any alibi witnesses he wished to have called. See *United States v. Dansker,* 537 F.2d 40, 64 (3rd Cir. 1976). After the expiration of nearly 20 months Raines now contends his counsel failed to investigate and subpoena alibi witnesses.

However, the record shows that on the witness stand, Raines admitted that when agent Preston arrested him and inquired of his whereabouts on February 12th, he said he did not know. Subsequently, he recalled he was "visiting a friend or friends" at Edinboro College. (Tr. pp. 121–122).

The trial transcript at pages 121 through 123 reveals the following on cross-examination:

2. Barden and Raines lived in Alliquippa, Pa.

3. Barden was a chronic robber and subsequently was sentenced to prison for 20 years.

(p 121) Q. What is the name of the friend?

A. Friends. I went up to—When I was up there, I seen Kathy Brown, a guy by the name of Telles, a guy by the name of Blood. I met other people but I only know their names.

The Court: Kathy Brown and who else?

The Witness: A guy by the name of Telles, a guy by the name of Blood. Thats what they call him.

The Court: Blood?

The Witness: Yes, sir.

By Mr. Barr:

Q. What did you go to see them for?

A. They're old friends of mine.

\* \* \* \* \* \*

(p 123) Q. Who were you with at this time again?

A. What time are you speaking of?

Q. February 12th.

A. Telles, Blood. There was another roommate by the name of Robert. He had another roommate I think his name was Russell. I'm not sure.

The Court: Russell?

The Witness: Yes, sir.

It was evident at the trial, other than Kathy Brown, the defendant did not know the surnames and addresses of the persons he allegedly was visiting at Edinboro College on February 12th. He was unable to supply his retained counsel with the names and addresses of any alibi witness. None of his "friends" were at Edinboro College from July through September 2, 1975, which was probably during vacation. (See affidavit of Mary Rugh).

The claim of ineffective assistance of counsel based on Attorney Cohen's failure to subpoena Kathy Brown, Telles, Blood, Robert and Russell lacks substance and borders on the frivolous. No one can subpoena persons without providing their surnames as well as their addresses.

Attached to the motion to vacate filed on March 17, 1977 are two affidavits of identical form, one signed by Telles D. Kimbrough on January 14, 1977, and the other signed by Keith Abercrombie on November 23, 1976. Both form affidavits state that the affiants were with Raines "at the time of the robbery" from the 11th to the 14th of February (no year is mentioned) at Edinboro College, which is approximately 125 miles distant from the scene of the robbery. Below the affidavit some one set out Kimbrough's address at Ambridge, Pa. No address appears for Keith Abercrombie. No one having a first name of "Keith" was mentioned by Raines at the trial. Also attached to the motion is an affidavit by Mary Rugh, Assistant Dean of Women at Edinboro College, attesting that Attorney Cohen on September 2nd made a last minute effort to locate some alibi witnesses for Raines but without success. See also Attorney Cohen's affidavit.

Raines' affidavit dated June 1, 1977 agrees that he did not know the proper names of the witnesses, *"and that they were only known to me by Nick-Names (sic)."* He also states that Cathy (sic) Brown, a secretary at Edinboro and the Assistant Dean, Mary Rugh "could attest to my presence in Edinboro during that week" i. e. at the time of the robbery. However, no affidavits of Kathy Brown or Mary Rugh attesting to that fact accompanied the motion or traverses filed by the defendant. Attorney Cohen's affidavit asserted that after his inquiry Ms. Rugh could not substantiate Raines' presence at Edinboro on February 12th. Ms. Rugh's affidavit gives no indication that she and Kathy Brown could be alibi witnesses.

In our opinion the record is conclusive that Attorney Cohen did not render ineffective assistance in failing to investigate and subpoena alibi witnesses for the trial because the defendant was unable to inform him of the proper names and addresses of his alleged alibi witnesses.

■ Attached to defendant's motion is a statement, not sworn to, by the other robber, Kevin L. Barden, dated 9–29–75 which appears to be a recantation of his trial

 

testimony implicating Raines.[4] Barden was sentenced on October 21, 1975. This statement starts out with the following:

"This affidavit of statement becomes invalid, if used for any reason(s) before or on the 21st day of October 1975.

"I Kevin L. Barden due (sic) swear that the statement in (sic) written in the following are in fact and truth. Not to be used for any reason but to contradict any testimony given against Albert D. Raines by myself in any Court of Law."

In our opinion this alleged recantation, of doubtful reliability as appears by the preamble quoted above, does not justify granting a motion to vacate sentence under section 2255. A recantation by a witness does not demonstrate a constitutional, or jurisdictional, or fundamental defect justifying relief under this section. The verdict of guilty had ample evidential support without the testimony of codefendant Barden.

■ Defendant's contention that the failure of the prosecution to disclose evidence favorable to him likewise must fail. Defendant's claim "that the Government withheld the fact that thier (sic) were two (2) members of the Ambridge Savings and Loan Co. that couldn't [identify] or thought that movant was not the criminal actor" (Motion page 3) is contradicted by the record. The three testifying tellers disclosed that Joyce Johnson was in the bank during the robbery. (Tr. pp. 14, 34–35, 43, 50–51). One of the tellers disclosed that the secretary was present. (Tr. p. 50). Barden testified that a secretary was present at a desk in back of the bank and a teller helped him collect the money. (Tr. p. 89). As previously mentioned Raines' counsel in cross-examining F.B.I. agent Preston established that two employees in the bank at the time of the robbery could not identify Raines, one, Joyce Johnson, was engaged in stuffing money in a pillow case held by Barden, and the second, the secretary, located in the back of the bank was unable to identify anyone. She was not even shown the photographic spreads. The Government did not suppress the fact that these two employees were present during the robbery. There is no evidence that either would have testified that Raines was not one of the robbers. There was no fundamental miscarriage of justice with respect to Raines' conviction in regard to the two employees who did not testify.

An appropriate order will be entered.

---

4. It does not appear when or under what circumstances Raines came into possession of the Barden statement dated 9–29–75.