STATE OF MARYLAND *v.* ORVEL WINSTON LLOYD

[No. 394, September Term, 1980.]

*Decided May 6, 1981.*

The cause was argued before GILBERT, C. J., and LOWE and MASON, JJ.

*Ray E. Stokes, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Robert C. Bonsib, Assistant State's Attorney for Prince George's County,* on the brief, for appellant.

*Gilbert H. Robinette* for appellee.

MASON, J., delivered the opinion of the Court.

The principal question we are asked to decide is whether appellee was denied effective assistance of counsel because his attorney refused to call alibi witnesses after being told by appellee that he had committed the crime charged.

Following an evidentiary hearing under the Uniform Post Conviction Procedure Act, Md. Ann. Code, art. 27, § 645A et seq., the convictions of Orvel Winston Lloyd, appellee, for armed robbery and related counts were set aside, and appellee was awarded a new trial. The State's application for leave to appeal from that determination was granted, and the case was transferred to this Court's appeals docket.

According to the evidence adduced at appellee's original trial, three men entered the residence of Barry K. Marsh on 28 November 1977. The assailant with the shotgun forced Barry to lie face down on the living room floor while the other two men ransacked the house. Upon hearing a car pull into the driveway, the robbers fled taking with them, among other things, Barry's wallet containing $41.00 and a VISA credit card bearing Account Number 436-170-353-746. At trial, Barry identified appellee as the person who wielded the shotgun during the robbery. The State also produced evidence from a credit card investigator who testified that he received a credit card charge slip from a service station in Columbia, South Carolina which showed that gasoline had been purchased with Barry's stolen credit card on 24 December 1977 by a person driving an automobile with tag number BML 884. There was also testimony that on 7 March 1978, appellee was arrested as he was observed exiting a

1977 black Chevrolet Monte Carlo with Maryland tag number BML 884.

Appellee did not take the stand and the only evidence introduced on his behalf was the testimony of a police officer who stated that Barry Marsh's brother, Jeffrey, who was in the house during the robbery, was unable to identify appellee as one of the robbers.

At the post conviction hearing, appellee testified that on the date of Barry Marsh's robbery he was at his sister's house in Hilliard, Florida, and that prior to trial he gave his attorney, Thomas A. Lohm, the names of several witnesses who would testify to this effect, but none was called. Appellee also testified that he went to Florida for the Christmas holidays in his own car and not in the Monte Carlo with tag number BML 884 which belonged to his wife. He also stated he told Lohm that this vehicle was in Alvin Jenkins' garage on 24 December 1977 being repaired, but Lohm did nothing about it. According to appellee, Lohm would not call any of his alibi witnesses to testify because he felt that "it was scheme I was working up . . . I reckon he felt that I was trying to get somebody to tell a lie for me."

Appellee's testimony that he was in Florida on the date of the robbery and that the Monte Carlo was being repaired on 24 December 1977 was corroborated by the testimony of several witnesses. In addition, appellee's brother testified that he came to Maryland two or three days before trial to see whether Lohm wanted certain witnesses, but Lohm told him that the witnesses were not needed.

Thomas Lohm, a member of the Maryland bar since 1954, testified that he has tried over 3,000 cases and had been an Assistant State's Attorney for Montgomery County for five years. During the last three to four years he had tried 150 cases a year — sixty percent of which were criminal, and since 1973 he has successfully represented appellee in several criminal causes. According to the post conviction judge, Lohm is known as "an excellent attorney with a vast knowledge as far as the practice of criminal law is concerned."

With respect to the instant case, Lohm testified that he interviewed appellee on more than one occasion, obtained open file discovery from the State's Attorney's Office, and gave appellee copies of all motions filed and a copy of the State's answer to his motion for discovery and inspection. He also wrote appellee a comprehensive letter regarding the charges and sentences facing him, and set forth a plea bargain agreement offered by the State.

Regarding the calling of alibi witnesses, the following colloquy occurred between the Assistant State's Attorney and Lohm:

Q: Now, These people that have been present in court testified, in some cases, they approached you. Why did you not use them as alibi witnesses when they approached you?

A: I will have to give you the background on this. In my first interview with Winston Lloyd, he told me that he had robbed Barry Marsh. He told me that he had been paid $500 to rob Barry Marsh. I think he told me that they would find some Dilaudid or some drug there or money. With that statement to me, there was no need to inquire about any alibi witness.

Lohm's testimony on cross-examination regarding this matter was as follows:

Q: You testified earlier that Winston told you he had been given $500 to rob Barry Marsh, to get Dilaudid?

A: I believe it was Dilaudid.

Q: And once he told you that, there was no need to inquire as to alibi witnesses. Isn't that your statement?

A: That is exactly my statement.

Q: So once you had that statement, isn't it true that you were convinced in your mind that anyone

who would approach you with an alibi for Winston at the time of the crime was lying?

A: Yes.

Lohm admitted he knew that the State intended to introduce into evidence a charge slip with the account number of Barry Marsh's stolen credit card and the tag number issued to a Monte Carlo owned by appellee's wife. When asked whether he inquired where the Monte Carlo was at the time the charge card was used, Lohm explained:

> Winston said they used that car to go to Florida. Now, he also said something else. My notes aren't clear on this. At one point he said that the same car he was busted in was the car he went to Florida in. Then I have a sketchy note, that the person who was with him on the Florida trip had switched tags, inferring that the tag from some car had been switched to another. I didn't follow up on that note. It just wasn't important to me, at the time.

Lohm also stated that he was convinced he had a "loser" and that his only defense was to attack the identification testimony of Barry Marsh, an admitted drug dealer.

In holding that appellee was denied effective assistance of counsel, the hearing judge found as a fact that appellee told Lohm that he had robbed Barry Marsh. The hearing judge also found that because of appellee's admission, Lohm did not interview any of the alibi witnesses nor did he investigate the information he received regarding the Monte Carlo which was issued tag number BML 884 being in a garage in College Park, Maryland and not in South Carolina on the date that Barry Marsh's credit card was used. He further found that the testimony of the alibi witnesses had probative value, and if it had been presented and believed by the trier of facts, appellee would not have been found guilty of the offenses charged.

As we view it, the critical question in this case is whether Lohm's failure to call the alibi witnesses and to investigate the whereabouts of the Monte Carlo on the date Barry

Marsh's credit card was used in South Carolina was a denial of effective assistance of counsel.

The test to be applied in determining if a defendant in a criminal case was denied effective assistance of trial counsel is whether under all of the circumstances of the particular case a defendant was afforded genuine and effective representation. *Slater v. Warden,* 241 Md. 668, 673, 217 A.2d 571 (1966); *State v. Mahoney,* 16 Md. App. 193, 201, 294 A.2d 471 (1972). *See also Marzullo v. Maryland,* 561 F.2d 540, 543 (4th Cir. 1977), *cert. denied,* 435 U.S. 1011 (1978) where the Court, relying on *McMann v. Richardson,* 397 U.S. 759 (1970), held that the test for judging effective assistance of counsel is not whether representation was so poor as to make a farce of the trial, but whether the defense counsel's representation was within the range of competence demanded of attorneys in criminal cases. Moreover, the burden is on the defendant to prove that defense counsel's representation was not effective. *State v. Hardy,* 2 Md. App. 150, 156, 233 A.2d 365 (1967). "Each case wherein ineffective assistance of counsel is asserted, must necessarily be decided upon the facts of that case." *Thomas v. State,* 516 S.W.2d 761, 765 (Mo. Ct. App. 1974).

Although the failure to call alibi witnesses presents a ground on which relief may be granted for ineffective assistance of counsel, *Evans v. Warden,* 240 Md. 333, 335, 214 A.2d 144 (1966); *accord, Johns v. Perini,* 462 F.2d 1308, 1315 (6th Cir. 1972); *Gomez v. Beto,* 462 F.2d 596, 597 (5th Cir. 1972), the decision whether to call a witness is ordinarily a matter of trial tactics within the discretion of defense counsel. *Johns v. Warden,* 240 Md. 209, 212-213 A.2d 469 (1965); *Shelton v. State,* 3 Md. 394, 401, 239 A.2d 610 (1968); *accord United States v. Dingle,* 546 F.2d 1378, 1385 (10th Cir. 1976); *see also People v. Rodriguez,* 73 Cal. App. 3d 1023, 141 Cal. Rptr. 118 (Ct. App. 1977) where the court stated:

> The law is well settled that a constitutionally inadequate representation by counsel is not established by a showing merely that defense counsel has failed to interview and call all prospective wit-

nesses .... since some witnesses may, with apparent certainty, be of little or no assistance to the defense, and since 'the choice of which, and how many, of potential witnesses is precisely the type of choice which should not be subject to review by an appellate court.'

141 Cal Rptr. at 121. (Citations omitted.) In order to prevail on a claim of ineffective assistance of counsel, a defendant must establish that he acted with diligence in supplying the names and addresses of alibi witnesses, and that alibi testimony would have been beneficial to his or her case. *Raines v. United States,* 434 F. Supp. 1168, 1172 (W.D. Pa. 1977); *Williams v. United States,* 295 A.2d 503, 505 (D.C. 1972); *Commonwealth v. Williams,* 274 Pa. Super. Ct. 464, 418 A.2d 499, 503 (1980). Defense counsel, however, should not call alibi witnesses when the attorney knows or is convinced that such witnesses will offer perjured testimony.[1] *Cornell v. State,* 396 F. Supp. 1092, 1099 (D. Md. 1975); *In re Branch,* 70 A.2d 200, 449 P. 2d 174, 181, 74 Cal. Rptr. 238 (1969); *People v. Weston,* 9 Cal. App. 3d 330, 87 Cal. Rptr. 922, 926

---

1. Courts disagree on what course of action defense counsel should take when his client, as opposed to collateral witnesses, plans to give perjured testimony. When defendant wants to testify falsely, the defense counsel is presented with a greater ethical dilemma or "trilemma", *i.e.,* the defendant has a basic and fundamental right to testify on his behalf; the attorney has a duty to his client, and as an officer of the court, the attorney may not present perjured testimony under DR 7-102 (A) (4). For cases and legal commentaries discussing this matter, see Lowery v. Cardwell, 575 F.2d 727 (9th Cir. 1978); Thornton v. United States, 357 A.2d 429 (D.C. 1976), cert. den. 424 U.S. 1024; State v. Whiteside, 272 N.W.2d 468, 471 (Iowa, 1978); State v. Henderson, 205 Kan. 231, 468 P.2d 136, 139-140 (1970); In re Palmer, 246 N.C. 638, 252 S.E.2d 784, 790-791 (1979); State v. Trapp, 52 Ohio App. 2d 189, 368 N.E.2d 1278, 1281 (1977). *See also* Annot., Rights and Duties of Attorney in a Criminal Prosecution Where Client Informs Him of Intention to Present Perjured Testimony, 64 A.L.R.3d 385 (1975); Burger, Standards of Conduct for Prosecution and Defense Personnel: A Judge's Viewpoint, 5 AM. CRIM. L.Q. 11 (1966); Freedman, The Lawyer's "Trilemma", J. OF SECTION OF LITIGATION, AMERICAN BAR ASSOCIATION 26 (1975); Freedman, Professional Responsibility of the Criminal Defense Lawyer: The Three Hardest Questions, 64 MICH. L. REV. 1469 (1966); Lefstein, The Defense Lawyer's Dilemma, 6 HOFSTRA L. REV. 665 (1978); Reichstein, The Criminal Law Practitioner's Dilemma, What Should the Lawyer do when his client intends to testify falsely. 61 CRIM. L.C. & P.S. 1 (1977); Noonan, The Purposes of Advocacy and the Limits of Confidentiality, 64 MICH. L. REV. 1485 (1966); Wolfran, Client Perjury, 50 S. CAL. L. REV. 809 (1977).

(Ct. App. 1970); *Herbert v. United States,* 340 A. 2d 802, 804 (D.C. 1975); *Hampton v. State,* 558 S.W.2d 364, 370 (Mo. Ct. App. 1977); *Bennett v. State,* 549 S.W.2d 585, 587 (Mo. Ct. App. 1977); *Allen v. State,* 518 S.W.2d 170, 172 (Mo. Ct. App. 1974); *see also* EC 7-26 and DR 7-102 of the Code of Professional Responsibility of the American Bar Association which have been adopted by the Court of Appeals of Maryland in Maryland Rule 1230. Ethical Consideration 7-26 of Maryland Rule 1230 provides:

> The law and Disciplinary Rules prohibit the use of fraudulent, false, or perjured testimony or evidence. A lawyer who knowingly participates in introduction of such testimony or evidence is subject to discipline. A lawyer should, however, present any admissible evidence his client desires to have presented *unless he knows, or from facts within his knowledge should know, that such testimony or evidence is false, fraudulent, or perjured.* (Emphasis supplied.)

And Disciplinary Rule DR 7-102 (A) (4) provides:

> (A) In his representation of a client, a lawyer shall not:

> \* \* \*

> (4) Knowingly use perjured testimony or false evidence.

Defense counsel, however, should not decide "what is true and what is not unless there is compelling support for his conclusion." *State v. Whiteside,* 272 N.W.2d 468, 469 (Iowa 1978).

In ostensible reliance on *State v. Mahoney,* 16 Md. App. 193, 294 A.2d 471 (1972), the State argues "that the decision of trial counsel not to call the alibi witnesses in the instant case was a proper exercise of judgment. First of all, *Lohm* was precluded from presenting testimony which he knew was false. *See* Canon 7, Code of Professional Responsibility, EC 7-26, DR 7-102 (A) (4), Maryland Rules of Procedure.

Had he done so, he could have subjected himself to disciplinary action." Appellee, on the other hand, argues, "that an attorney should be representing his client as opposed to simply protecting himself from possible disciplinary action. Further, an attorney is an advocate not a judge. Lohm's conflict should have been resolved by bringing the conflict to the attention of the court."

In *State v. Mahoney, supra,* the defendant filed a petition for Post Conviction relief alleging that he was denied effective assistance of counsel because his attorney refused to call several alibi witnesses. Defense counsel testified that after interviewing all witnesses suggested by the defendant and being told by defendant's brother, a co-defendant in the case, that they committed the robbery, he did not call these witnesses because he thought their testimony would be false. In granting post conviction relief, the hearing judge found that the failure to call the alibi witnesses deprived the defendant of due process and if defense counsel "didn't like the way his client was insisting that the case be tried, he should have withdrawn his appearance, should have petitioned the court to relieve him of the obligation to defend." *Id.* at 200. The State filed an application for leave to appeal which was granted. In reversing the order of the lower court, we stated:

> We find that trial counsel's refusal to call the alibi witnesses did not require the grant of a new trial in the interest of justice. In so concluding we assume, *arguendo,* that the refusal to call the witnesses was an improper exercise of judgment. But even if it were improper, we believe that the impropriety was not such as to deny Mahoney the effective assistance of counsel or due process of law. Thus it provides no ground for the involving of Rule BK45 to grant a new trial.

*Id.* at 203.

\* \* \*

> We think it patent that the testimony of his mother and sister-in-law did not show that he was

at home at the time the crime was committed or that he could not have been a participant. None of the other alleged alibi witnesses were produced at the hearing and that their testimony would have tended to show that Mahoney was elsewhere when the robbery occurred remains as a bald assertion by Mahoney. Therefore, on the record before us, considering the evidence adduced at the trial, the failure to call the so-called alibi witnesses, even if an improper exercise of judgment on the part of Mahoney's attorney, was not so prejudicial, beyond a reasonable doubt, as to deny him the effective assistance of counsel or due process of law. We conclude that it did not justify the granting of a new trial.

*Id.* at 207.

The State's reliance on *Mahoney* for support of its position is misplaced. In that case we did not decide whether trial counsel was precluded under Maryland Rule 1230 from presenting evidence he knew was false. We reversed solely on the basis that the alibi witnesses would not have assisted the defendant's defense because their testimony would not have established his whereabouts at the time the crime was committed.

In *Cornell v. State of Maryland,* 396 F. Supp. 1092 (D. Md. 1975), a case factually similar to the instant case, the petitioner in a habeas corpus proceeding attacked the competency of his trial counsel for failing to call witnesses who would have provided an alibi for him on the night of the robbery, and who would have provided testimony that the flashlight, left outside of the house where the robbery occurred and on which his fingerprints were found, had been stolen from his automobile three days prior to the robbery. After finding trial counsel completely credible, the court accepted as true counsel's statement that the petitioner admitted to him before trial that he had committed the crime charged. The court then observed: "Such an admission seemingly would necessarily affect trial counsel's prepara-

tion and presentation of Cornell's case at trial," citing Canon 7 of the Code of Professional Responsibility of the American Bar Association which has been adopted by the Court of Appeals of Maryland. *Id.* at 1098. In addressing petitioner's contention that he was denied effective assistance of counsel, the court remarked:

> If Cornell had committed the crime, any witness who would have testified as to a complete alibi could not possibly have been telling the truth. And, since Cornell specifically told his trial counsel that he had dropped the flashlight at the scene of the crime, any testimony about the theft of a flashlight from Cornell three days before the crime would have been misleading at the very least. Therefore, even if it be assumed that trial counsel was informed by Cornell prior to trial that there were witnesses available who would offer an alibi for Cornell and who would testify that the flashlight had been stolen prior to the crime, it may well have been improper for trial counsel to offer such testimony to the Court. Certainly, trial counsel's actions in not offering such evidence can hardly be classified as incompetence or inadequacy.

*Id.* at 1099. The court also observed that the alibi witnesses would not have benefited petitioner's case.

Consonant with this view, *see Allen v. State,* 518 S.W.2d 171 (Mo. Ct. App. 1974), where the defendant, after telling his trial counsel that he committed the crime "but just wanted a trial," suggested to his attorney that there were witnesses who would testify that he "was at a place other than the place the crime occurred." Trial counsel rejected calling the proposed alibi witnesses. In addressing the issue of whether the action of trial counsel constituted ineffective assistance of counsel, the Court held:

> Here the trial attorney was under an absolute obligation not to present perjured testimony in support of his client. *McNamara v. State,* 502 S.W.2d

306, 308 (Mo. 1973). Such conduct is against the mandate of the Code of Professional Responsibility [DR 7-102 (A) (4)] and is a crime under Section 557.040, RS Mo. 1969, V.A.M.S. From the information available to him and in light of appellant's admissions to the attorney of participation in the crime, the trial attorney had no choice but to reject the use of the offered alibi testimony.

*Id.*, at 172. *Accord Bennett v. State,* 549 S.W.2d 585, 587 (Mo. Ct. App. 1977).

We think it clear that when a defendant tells his attorney before trial that he committed the crime charged and the attorney is convinced that his client is telling the truth, the attorney is precluded under Maryland Rule 1230 from calling or presenting alibi witnesses who would offer perjured testimony. Hence, the refusal of Lohm to call appellee's alibi witnesses in the present case was not a denial of effective assistance of counsel. Nor do we think it was a denial of effective assistance of counsel for Lohm not to conduct an investigation to determine whether the Monte Carlo, which had been issued tag number BML 884, was in a garage in Maryland or in South Carolina on the date Barry Marsh's credit card was used to purchase gasoline for a vehicle bearing tag number BML 884. Lohm testified that appellee told him that he had used the Monte Carlo to go to Florida and that he was "busted" in the same car. Lohm further testified that appellee also told him that the tags had been switched from one car to another. We think that this information plus appellee's admission that he had committed the crime was a sufficient basis for Lohm not to investigate further this matter. Moreover, it would have been a fabrication for Lohm to have offered evidence that the Monte Carlo was in Maryland after appellee had told him that he had used the vehicle in going to Florida. *See Polk v. State,* 506 S.W.2d 366, 373 (Mo. 1974) where the Court said "with his clients' admission, it may not be said that counsel was ineffective for failure to pursue further investigation." Furthermore, had Lohm knowingly presented perjured

testimony on behalf of his client, he would have been subject to both criminal prosecution, under Md. Ann. Code, art. 27, section 438, and disciplinary action pursuant to Maryland Rule 1230.

We do not mean to suggest, however, that once a defendant tells his attorney he is guilty, trial counsel may sit on his hands and do nothing. Even though the defendant may admit to his attorney that he is guilty, trial counsel has an obligation to make the State prove its case. *See Jones v. Cunningham,* 313 F.2d 347 (1963) where the Fourth Circuit expounded:

> We cannot acquiesce in the suggestion that because Jones told his court-appointed attorney that he was guilty there was nothing else for the lawyer to do but to plead him guilty and hope for a light sentence.

*Id.* at 352.

\* \* \*

> Of course, it is not for a lawyer to fabricate defenses, but he does have an affirmative obligation to make suitable inquiry to determine whether valid ones exist. Such a duty is imposed for the salutary reason that "[p]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered." *Von Moltke v. Gillies,* 332 U.S. 708, 721, 68 S. Ct. 316, 322, 92 L. Ed. 309 (1948).

*Id.* at 353. *See also Rummel v. Estelle,* 498 F. Supp. 793, 796 (W.D. Texas 1980). ABA Projection Standards for Criminal Justice, Standards Relating to the Defense Functions 4-4.1 (1980). Selinger, "Criminal Lawyer's Truth: A Dialogue on Putting the Prosecution to Its Proof on Behalf of Admittedly Guilty Clients." 3 J. OF LEGAL PROFESSION 57 (1978).

Appellee also presents two additional issues that were raised, but not decided by the post conviction hearing judge:

(1) That he was denied effective assistance of counsel because his trial attorney failed, upon request, to poll the jury, and

(2) That he was denied effective assistance of counsel because his appeal was dismissed after appellate counsel failed to file a brief on his behalf.[2]

Inasmuch as the post conviction hearing judge made no factual findings on these two issues, the case will be remanded for a ruling on these issues in accordance with Maryland rule BK45b which provides:

"The order [of the post conviction judge] shall include or be accompanied by a memorandum signed by the judge setting forth separately each ground upon which the petition is based, the federal and state rights involved, the court's ruling with respect to each ground, and the reasons for the action taken thereon."

For the reasons herein stated, the order of the post conviction hearing judge granting appellee a new trial on the basis that he was denied effective assistance of counsel is reversed. The case, however, will be remanded to the post conviction hearing judge to rule on the two issues that were raised but not decided.

> *Order reversed.*
> *Case remanded for further proceedings in accordance with this opinion.*
> *Costs to be paid by appellee.*

---

**2.** We make clear that Mr. Lohm was not appellants' counsel at that time.