472 A.2d 1044

**STATE of Maryland**

v.

**William MATTHEWS.**

**Post Conviction No. 162, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

April 4, 1984.

William D. Roessler, Asst. State's Atty. for Anne Arundel County, with whom was Stephen H. Sachs, Atty. Gen., for applicant.

No answer filed on behalf of William Matthews.

Submitted before MOYLAN, LISS and WILNER, JJ.

LISS, Judge.

On May 23, 1979, William Matthews was convicted by a jury in the Circuit Court for Anne Arundel County (Goudy, J.) of rape and kidnapping. The convictions were affirmed by this Court in an unreported per curiam opinion *Matthews v. State,* No. 1142, September Term 1979, filed April 29, 1980. A petition for writ of certiorari was denied, 288 Md. 739 (1980).

On April 15, 1982, Mr. Matthews filed his first petition seeking post conviction relief, (Md.Code art. 27, § 645A–645J). A hearing on the petition was held on September 7, 1983. The hearing judge ordered that because trial counsel failed to request an alibi instruction, Mr. Matthews was

entitled to a new trial. The State now seeks leave to appeal this order.

The test to be applied in determining if a defendant in a criminal case was denied effective assistance of trial counsel is whether under all of the circumstances of the particular case a defendant was afforded genuine and effective representation. *State v. Lloyd,* 48 Md.App. 535, 540, 429 A.2d 244 (1981). An attorney is not required to raise all possible defenses, but is permitted to make tactical decisions as to which defenses to pursue and which to abandon. *State v. Merchant,* 10 Md.App. 545, 551, 271 A.2d 752 (1970). The question before us in this case is whether counsel's tactical decision not to pursue an alibi defense amounted to ineffective assistance. In order to decide this question we must make a detailed review of the available evidence.

The victim testified that she was attacked around midnight on July 31, 1979 in downtown Annapolis. Her attacker forced her to drive to an isolated road in the Carr's Beach area of Anne Arundel County where he raped her. Afterwards, the assailant fled on foot and the victim drove to a police station. The rape took place only a few hundred feet from the applicant's home. The applicant testified that he was in Baltimore City on the evening of the rape.

Two plausible defense strategies were available. The first strategy was to try to show that the victim's identification testimony failed to meet the beyond a reasonable doubt standard. The second strategy was to try to win an acquittal by proving alibi.

We shall first review the evidence that was available for counsel to show that the victim's identification testimony failed to meet the beyond a reasonable doubt standard. Most of the time that the victim was in the rapist's company, the light by which she could see was poor. The opportunity to view her attacker was further limited by the fact that the attacker wore a mask. These factors caused the victim great difficulty in identifying her attacker. The police made no attempt to have the victim make a specific identification until November. In November the victim

viewed some photographs, but was unable to make an identification. The police had an artist prepare a composite drawing, but the record does not indicate that the drawing helped the victim to identify the applicant. In the following February, the victim viewed more photographs but was still unable to identify her attacker although she apparently viewed applicant's photograph. Also in February, the victim viewed a line-up. She was unable to identify the applicant in the line-up either. However, when the line-up men removed their shirts and were viewed by her for a second time, she finally identified the applicant. She admitted that she could not identify applicant's face, but averred that her identification was based on her viewing of applicant's body.

In addition to casting doubt on the victim's ability to identify her attacker, defense counsel was able to impeach the victim by showing that her in-court testimony varied from the original statement she gave to the police.

As regards the strategy of proving alibi, the defense had available the following facts. The applicant testified that he had lived his entire life in the Edgewood Road area. No evidence was presented to establish that applicant had any ties to Baltimore City. On the night of the rape, the applicant worked at a janitorial job in a state office building located near the place where the victim was abducted. Applicant stated that he got off from work at 9 p.m. and went home. He said he borrowed a car from a Rico Johnson and drove to Baltimore where, he explained, he visited his girlfriend. The evidence concerning the girlfriend was far from persuasive. The applicant stated that even though he had been dating the girlfriend for several months, he knew her only by her first name. He did not know her last name or where she lived. He did, however, say that she was a prostitute who worked on Baltimore Street. The Baltimore City police vice squad tried to locate her, but were unable to do so. Mr. Rico Johnson was interviewed by the police, but was unable to say anything "about the case."

Because no corroboration evidence was available to support the alibi, the alibi defense rested solely on applicant's

testimony. Applicant's credibility, however, was impeached when he testified that he had been previously convicted of destruction of property.

It is obvious from the above that the defense strategy of attacking the strength of the victim's identification testimony was far superior to trying to prove an alibi. In view of the victim's repeated failure to make an identification, doubt was generated as to the correctness of her ultimate "body identification." On the other hand, the alibi story was weak in at least two important aspects. First, the person who applicant said lent him the car he said he used to drive to Baltimore in effect denied making the loan. Second, applicant's scanty knowledge of his "girlfriend" must have raised a doubt as to whether she existed. No hard evidence of her existence was ever presented.

Counsel recognized that the victim's identification testimony was the weak link in the State's case and concentrated his efforts in attacking that testimony. He began his attack in opening argument where he reminded the jury of the State's heavy burden of proof. At trial he made an intense cross-examination of the victim, showing her many instances of uncertainty. Finally, in closing argument counsel again emphasized the weakness of the identification evidence and the fact that a guilty verdict required proof beyond a reasonable doubt.

Lawyers are not required to pursue all possible defense strategies. It has been recognized at the appeal level that it is important not to divert the court with weak arguments, but rather that it is more effective for counsel to focus on one central issue or at most a few key issues. *Jones v. Barnes,* —— U.S. ——, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). This same rationale applies at the trial level. In this case trial counsel had a very plausible argument in the victim identification issue and a highly improbable argument in the alibi defense. By concentrating only on the victim identification issue, counsel not only achieved the objective of a one issue focus, he also may have succeeded in diverting the jury from thinking about how weak the alibi explanation

was. From our review of the facts it appears quite possible that rather than helping the defense, the very questionable alibi explanation may have actually weakened the applicant's case. For example, if the defense had presented no evidence, the jury would simply have had to decide whether the victim's "body identification" should be accepted beyond a reasonable doubt. This would probably have been a close question. However, when the alibi was also offered, the jury was presented with the choice of whether the "body identification" or the alibi was more plausible. Because the facts clearly favored the body identification, the jury may have been led to accept the State's theory, not because it was particularly persuasive, but because it was more persuasive than the applicant's theory. We, of course, do not know how the jury reached their verdict, nor need we know. The record shows that the alibi defense offered questionable help to the defense and that counsel's decision not to pursue it was a legitimate trial strategy.

There is no requirement that trial counsel's strategy be submitted to and approved by the trial judge; it is only necessary that the strategy affords the defendant genuine and effective representation. *White v. State,* 17 Md.App. 58, 62, 299 A.2d 873 (1973). Counsel had a reasonable basis for believing that the alibi defense should not be used. Thus, in pursuing the strategy of attacking the victim's credibility and abandoning the defense of alibi, counsel pursued a legitimate and reasonable defense. We hold that under the circumstances of this case trial counsel's decision not to pursue the alibi defense nor to request an alibi instruction was a legitimate trial tactic and as such provided no basis for ruling that counsel's representation was ineffective. Consequently, we vacate the hearing judge's order for a new trial.

*APPLICATION FOR LEAVE TO APPEAL GRANTED.*

*ORDER FOR A NEW TRIAL VACATED.*