931 A.2d 528

Elmer Cleveland FORBES, Jr.

v.

STATE of Maryland.

No. 1661, Sept. Term, 2005.

Court of Special Appeals of Maryland.

Sept. 7, 2007.

Julia D. Bernhardt (Nancy Forster, Public Defender, on brief), for appellant.

Robert Taylor, Jr. (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel MURPHY, C.J., SALMON, BARBERA, JJ.

MURPHY, C.J.

In the Circuit Court for Baltimore County, a jury convicted Elmer Cleveland Forbes, Jr., appellant, of robbery with a dangerous weapon and use of a handgun in the commission of that felony. Despite his argument to the contrary,[1] we hold that the State's evidence was sufficient to establish that he committed those offenses on March 20, 2002 at a Royal Farm

---

1. Appellant has presented three arguments for our review, the third of which is his "sufficiency" argument. In the words of his brief:

   THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE CONVICTIONS, AND, THEREFORE, DEFENSE COUNSEL'S FAILURE TO ARGUE WITH PARTICULARITY FOR A JUDGMENT OF ACQUITTAL ON THE OFFENSE OF ROBBERY WITH A DANGEROUS WEAPON AND ON THE ISSUE OF ACCOMPLICE CORROBORATION DEPRIVED [APPELLANT] OF THE EFFECTIVE ASSISTANCE OF COUNSEL.

Store on North Point Boulevard. He also argues that there are two reasons why he is entitled to a new trial:

I. THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTOR TO QUESTION [APPELLANT] SO AS TO INSINUATE THAT [APPELLANT] AND HIS COUNSEL HAD AGREED AND ATTEMPTED TO SUBORN PERJURY, IN VIOLATION OF THE ATTORNEY–CLIENT PRIVILEGE, AND IN THE ABSENCE OF A GOOD–FAITH BASIS TO ASK SUCH QUESTIONS.

II. THE TRIAL COURT ERRED IN OVERRULING OBJECTIONS TO CLOSING ARGUMENT, AND IN DENYING A MOTION FOR MISTRIAL.

For the reasons that follow, we agree with appellant's first argument, as a result of which appellant's second argument is hypothetical and moot. We must therefore vacate the judgments and remand for a new trial.

### Relevant Factual Background

The State's witnesses against appellant included Steven Gessner, who testified as follows. He and appellant went to the store with the intent to rob a drug dealer they planned to meet behind the store. They entered the store after they could not lure the drug dealer to the location where they intended to commit the robbery. At this point, to Gessner's surprise, appellant committed the robbery. Gessner's testimony was corroborated by John Fouts, who reviewed photographs that had been created from the store's videotape on which the robbery was filmed, and identified appellant as one of the two robbers.

Appellant's brief includes the following assertions:

[I]n defense, [appellant] adduced evidence that he could not have committed the robbery on March 20, 2002, because he was with family members the entire night. He remembered this, three years later, because Catherine Fouts, the mother of his son, died in March 2002, and the viewing at Connelly's Funeral Home was on March 20, 2002 from 7:00

to 9:00 p.m. Ms. Fouts's family members had warned Mr. Forbes to stay away, but, according to Mr. Forbes and his sister Helen Forbes, she gave him a ride to the funeral home, but he did not go inside to the room where the viewing took place. According to both Mr. and Ms. Forbes, after the viewing, they talked in the parking lot, and then went to their mother's house, where they spent the night.

Additionally, according to Michael Knighton and Jason Delcidello, Mr. Gessner told them that he had committed the robbery, not with Elmer Forbes but his brother, Sammie Forbes, who closely resembles him. Sammie Forbes appeared before the jury, but did not testify, as he had invoked his Fifth Amendment privilege against self-incrimination.

The record shows that the following transpired during appellant's cross-examination:

[THE PROSECUTOR:] Your brother is Sammie?

[APPELLANT:] Yes, sir.

[THE PROSECUTOR:] Did you ever tell Sammie to lie for you?

[APPELLANT:] To lie for me?

[THE PROSECUTOR:] Yeah.

[APPELLANT:] No.

[THE PROSECUTOR:] Did you ever tell him why don't you come in and testify for you that he did it and that you didn't?

[APPELLANT:] No, sir.

[THE PROSECUTOR:] You never told him to do that?

[APPELLANT:] No, sir.

[THE PROSECUTOR:] To your knowledge, at a prior trial, [Sammie Forbes] was never here ready to take your directions, is that what you're saying?

[APPELLANT:] He was here at the courthouse one time, yes.

[THE PROSECUTOR:] He was downstairs, in the lockup, wasn't he?

[APPELLANT:] I don't know. They don't put them with us.

[THE PROSECUTOR:] I know that. But you wanted your lawyer to get him here to lie for you, didn't you?

[DEFENSE COUNSEL:] Objection.

[APPELLANT:] No, sir.

THE COURT: Overruled.

[THE PROSECUTOR:] Did you ever tell your lawyer that, Hey, listen, Sammie did it. Sammie will lie. Sammie will tell a story. Sammie will get up, Sammie will say he did it. Did you ever say anything like that—

[APPELLANT:] No, sir.

[DEFENSE COUNSEL:] Objection.

[THE PROSECUTOR:] to your attorney?

[APPELLANT:] No, sir.

THE COURT: Overruled.

The record also shows that this cross-examination occurred the day before appellant's brother Sammie appeared before the jury.

### Discussion

■■■ In *Haley v. State*, 398 Md. 106, 919 A.2d 1200 (2007), the Court of Appeals recently awarded a new trial to a robbery defendant who was cross-examined about (1) whether he had provided his lawyer with the information he testified to on direct examination, and (2) *when* he provided that information.[2] In that case, the alleged victim "denied ever having seen [the defendant] prior to the incident." *Id.* at 116, 919 A.2d 1200. The defendant, however, testified that he and the victim "had been dating off and on for over a year," and "[i]n an effort to demonstrate an ongoing relationship with [the

---

2. We note that the holding in *Haley* was not available to the circuit court. The appellate court, however, is required to apply the law as it exists on the date that the opinion is filed. *Snowden v. State*, 156 Md.App. 139, 152 n. 18, 846 A.2d 36 (2004), *aff'd*, 385 Md. 64, 867 A.2d 314 (2005).

alleged victim], [the defendant] described ... items inside the [alleged victim's] residence, and [the alleged victim's] dog." *Id.* at 117–18, 919 A.2d 1200. According to the Court of Appeals:

> Petitioner's complaint is not solely that he was cross-examined about the facts surrounding his defense; his complaint is also that the State inquired into the *timing* of *when* he disclosed certain information to his attorney. In fact, the two issues are linked based on the prosecutor's phrasing of questions.

> \* \* \*

> Haley's communications to his lawyer, and the timing of when he told the attorney the critical information, fall within the attorney-client privilege.

> \* \* \*

> The purpose and object of the prosecutor's questions as to the timing of when petitioner told his attorney about his relationship with the victim and the information about the victim's house was to discredit petitioner's testimony and to convince the jury that petitioner's defense was an after-thought or manufactured on the eve of the trial. It was not the proper subject of cross-examination and put the credibility of petitioner in issue based on what and when he told his attorney. Petitioner's testimony as to the facts of the event at issue did not constitute a waiver of the attorney-client privilege as to what and when he communicated with his attorney as to the incident. The prosecutor's repeated questions as to when and what petitioner told his attorney went beyond the scope of proper cross-examination and invaded the attorney-client privilege.

398 Md. at 129–31, 919 A.2d at 1213–14.

According to the State, *Haley* is inapplicable to the case at bar because (in the words of its brief):

> In the instant case, ... [appellant] did not disclose either the content of his communications with his attorney, nor the timing of those communications. In fact, he denied having

the communication the State asked him about. Accordingly, no privilege was breached.

We disagree with the State's argument. We are persuaded that the prosecutor should not have been permitted to ask appellant, in effect, whether, during a confidential communication with his lawyer, appellant (1) confessed that he had committed the robbery, and (2) asked his lawyer to call a defense witness who was prepared to present false testimony.

It is of no consequence that appellant denied the accusations contained in the prosecutor's questions. As this Court pointed out in *Garner v. State*, 142 Md.App. 94, 788 A.2d 219 (2002):

> Questions alone can impeach. Apart from their mere wording, through voice inflections and other mannerisms of the examiner-things that can not be discerned from the printed record—they can insinuate; they can suggest; they can accuse; they can create an aura in the courtroom that the trial judge can sense but about which we could not speculate. The most persistent denials, even from articulate ... witnesses, may not suffice to overcome the suspicion they can engender....

*Elmer v. State*, 353 Md. 1, 15, 724 A.2d 625, 632 (1999)(quoting *Craig v. State*, 76 Md.App. 250, 292, 544 A.2d 784, 805 (1988), *rev'd on other grounds*, 316 Md. 551, 560 A.2d 1120 (1989), *jdmt. vacated on other grounds*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990)).

*Id.* at 107, 788 A.2d 219.

We recognize that the attorney-client privilege does not operate to exclude *everything* the criminal defendant says to his or her lawyer. In *Newman v. State*, 384 Md. 285, 863 A.2d 321 (2004), the Court of Appeals stated that "[t]he privilege, although essential to an effective attorney-client relationship, is not absolute." *Id.* at 302, 863 A.2d 321. The *Newman* Court also stated:

> [W]e agree with the Supreme Court's assessment that it would be an abuse o f the privilege to permit t he attorney-client privilege to "extend to communications 'made for the purpose of getting advice for the commission of a fraud' or a

crime." *United States v. Zolin,* 491 U.S. 554, 563, 109 S.Ct. 2619, 2626, 105 L.Ed.2d 469, 485 (1989). Thus, we hold that the crime-fraud exception applies in Maryland to exempt communications seeking advice or aid in furtherance of a crime or fraud, from the protection of the attorney-client privilege.

*Id.* at 309, 863 A.2d 321.

*Newman* makes it clear that, if appellant had asked his trial counsel to call a defense witness who was prepared to present false exculpatory testimony,[3] appellant's trial counsel would have been permitted to disclose the fact that appellant made such a request. Id. at 310–12, 863 A.2d 321. In the case at bar, however, (1) appellant's trial counsel made no such disclosure, and (2) there is no indication in the record that the State could present admissible evidence that appellant made such a request.[4] Under these circumstances, appellant was unfairly prejudiced by the cross-examination questions accusing him of asking his trial counsel to call Sammie so "Sammie will say he did it."

We also recognize that there are situations in which the "opening the door rule" operates as a waiver of the attorney-client privilege. For example, in *Casey v. State,* 124 Md.App. 331, 722 A.2d 385 (1999), while ordering a new trial on the ground that the appellant had been cross-examined about conversations with his lawyer that were unrelated to those

---

**3.** In *State v. Lloyd,* 48 Md.App. 535, 429 A.2d 244 (1981), this Court made it "clear that when a defendant tells his attorney before trial that he committed the crime charged and the attorney is convinced that his client is telling the truth, the attorney is precluded ... from calling or presenting alibi witnesses who would offer perjured testimony." *Id.* at 546, 429 A.2d 244. On the other hand, the gambit of having Sammie Forbes—who did not testify—"appear before the jury" is consistent with defense counsel's "obligation to make the State prove its case." *Id.* at 547, 429 A.2d 244.

**4.** If a criminal defendant does request that his or her lawyer call a witness who will present false exculpatory testimony, while the lawyer *may* disclose such a request, MD. RULE OF PROF'L CONDUCT R. 3.3(E) (2006) does not *require* the lawyer to do so.

conversations with his lawyer that appellant wrote about in a letter to a co-defendant, this Court stated:

> We agree with the circuit court that the State was entitled to question appellant about the text of his letter, about those conversations with his attorney disclosed in the letter, and about the fact that the letter contains a disclosure of his then existing intent to communicate information to his counsel. . . . On the record before us, however, we are persuaded that appellant's letter did not open the door to cross-examination about anything else that appellant did not disclose to his attorney. The privilege at issue protects against "testimony that no such communication was ever made between the client and the attorney." *Harrison v. State*, 276 Md. 122, 152, 345 A.2d 830 (1975).

*Id.* at 345–46, 722 A.2d 385.

In *Casey,* this Court established the following procedure to be applied on retrial:

> When this issue arises at the next trial, the circuit court should resolve it in accordance with the procedure called for in *Harrison, supra,* 276 Md. at 151, 345 A.2d 830, "a preliminary inquiry out of the presence of the jury" to identify the permissible and the prohibited areas of inquiry. The State is, of course, entitled to introduce appellant's letter to [codefendant]. If appellant testifies, the State will be entitled to establish on cross-examination (1) that he received from counsel the information disclosed in the letter, and (2) that the letter expressed his then existing intent. Unless appellant's direct examination "opens the door" to other privileged communications, however, the circuit court must not allow the State to question appellant about (1) when he obtained counsel, (2) anything else that he said— and did not say—to his attorney, and (3) anything else that his attorney said—and did not say—to him.

*Id.* at 346–47, 722 A.2d 385. This procedure complies with the "preliminary inquiry" requirement imposed by *Harrison, supra,* in which the Court of Appeals stated:

> Procedurally, we think [the trial judge] erred in not conducting a preliminary inquiry out of the presence of the

jury and hearing testimony of all the surrounding facts and circumstances to determine initially whether a confidential relationship existed between Harrison and [the lawyer-witness], and if so, whether or not there had been a waiver of the privilege.

*Id.* at 151, 345 A.2d 830.

█ We therefore hold that *Harrison* prohibits the prosecutor from cross-examining the defendant about anything that the defendant did—or did not—say to his or her lawyer, unless and until (1) the prosecutor has expressly requested the trial judge's permission to do so, and (2) after inquiring into "all the surrounding facts and circumstances," the trial judge has expressly identified "the permissible and the prohibited areas of inquiry." We also hold that, in a jury trial, both the request and inquiry must take place out of the presence of the jury. We are confident that, had such a request been made in the case at bar, the inquiry would have resulted in a ruling that prohibited the prosecutor from asking the unfairly prejudicial questions. Appellant is entitled to a new trial.

**JUDGMENTS VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY BALTIMORE COUNTY.**