533 A.2d 695

STATE of Maryland

v.

Joseph DOWDELL aka Claude Dowdell

No. 1604, Sept. Term, 1986.

Court of Special Appeals of Maryland.

Dec. 1, 1987.
Certiorari Denied March 28, 1988.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Kurt L. Schmoke, State's Atty., for Baltimore City and Marshall Feldman, Asst. State's Atty., for Baltimore City on the brief), Baltimore, for appellant.

Thomas J. Bollinger, Assigned Public Defender, Towson (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellee.

Argued before GILBERT, C.J., and MOYLAN and ALPERT, JJ.

MOYLAN, Judge.

Although the imprecision makes no difference in this particular case, this appeal illustrates, seemingly for the

thousandth time, the epidemic tendency to wander back and forth across the federal-state boundary with little thought as to which sovereign law is being invoked. The Sixth Amendment to the Constitution of the United States provides, in pertinent part, "in all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." That federal provision was made applicable to the states by being deemed incorporated in the due process clause of the Fourteenth Amendment. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Article 21 of the Maryland Declaration of Rights provides, in pertinent part, "That in all criminal prosecutions, every man hath a right ... to be allowed counsel." The Court of Appeals has held that there is no distinction between the right to counsel guaranteed by the Sixth Amendment and Article 21 of the Maryland Declaration of Rights.[1] *State v. Tichnell,* 306 Md. 428, 440, 509 A.2d 1179, 1185 (1986). Since *Gideon v. Wainwright,* the federal case law has dominated, if not preempted, the theoretically mutual field.

The initial surge of litigation in the wake of *Gideon v. Wainwright* dealt with the actual or constructive denial of the assistance of counsel altogether. Except on such peripheral questions as state interference with the ability of counsel to render effective assistance, *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), and a claim that assistance was rendered ineffective by a conflict of interest, *Cuylar v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Supreme Court never

---

1. A weather eye to history would seem to suggest that the Maryland constitutional right is narrower than the federal. A number of Maryland decisions have stated that the purpose for placing this provision in the Maryland Declaration of Rights was simply to do away with the then-prevailing rule of English common law, which denied an accused felon the right to be represented by counsel. *Raymond v. State ex rel. Szydlouski,* 192 Md. 602, 65 A.2d 285 (1949); *Marvin v. Warden,* 212 Md. 634, 129 A.2d 85 (1957); *Warden v. Palumbo,* 214 Md. 407, 135 A.2d 439 (1957); *Edwardsen v. State,* 220 Md. 82, 151 A.2d 132 (1959). The deliberate use of the verb "allowed" strongly supports that interpretation of the limited "original intent."

directly addressed the issue of "actual effectiveness" of counsel until its landmark decision of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Justice O'Connor, speaking for the majority, pointed out in *Strickland* that "This Court has not yet had occasion squarely to decide [what] is the proper standard." 466 U.S. at 684, 104 S.Ct. at 2062. "For these reasons, we granted *certiorari* to consider the standards by which to judge a contention that the Constitution requires that a criminal judgment be overturned because of the actual ineffective assistance of counsel." *Id.* The *Strickland* opinion then articulated the standards which now control claims of ineffective assistance. The *Strickland* test is a two-pronged one, which we will discuss in more detail as we apply it to the facts of the present case. *Strickland* also supplied, moreover, a philosophic overview of the right to effective assistance generally and sound guidelines for judges to employ in assessing claims of ineffective assistance.

## The Philosophic Approach

The Supreme Court pointed out that the pole star of inquiry is not whether counsel committed a professional error but whether the defendant received a fundamentally fair trial:

"The Court has not elaborated on the meaning of the constitutional requirement of effective assistance in the latter class of cases—that is, those presenting claims of 'actual ineffectiveness.' In giving meaning to the requirement, however, we must take its purpose—to ensure a fair trial—as the guide. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."

466 U.S. at 686, 104 S.Ct. at 2064. The Court subsequently underscored the point that the critical issue is not lawyerly error but the ultimate fairness of the trial itself:

"[T]he purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial."

466 U.S. at 698, 104 S.Ct. at 2070. The Supreme Court then supplied the American judiciary with the proper attitudinal approach for measuring ineffective assistance claims. Judges are admonished not to fall into the tempting habit of pointing out, with the benefit of hindsight, various possible mistakes made by trial counsel and then speculating that such mistakes may have affected the outcome:

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to secondguess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."

466 U.S. at 689, 104 S.Ct. at 2065. By way of a further guideline for resolving the marginal or ambiguous situation, the Supreme Court mandated not simply a "presumption" but a "strong presumption" that the performance falls within the "wide" range of reasonably acceptable conduct:

"Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' "

*Id.*

Our own Court of Appeals has fully endorsed this attitudinal approach to claims of ineffective assistance. *State v. Tichnell, supra,* 306 Md. at 441, 509 A.2d at 1187; *Harris v. State,* 303 Md. 685, 698 n. 7, 496 A.2d 1074, 1080 n. 7

(1985). With that mind-set firmly before us, we turn to the case at hand.

## The Present Case

The appellee, Joseph Dowdell, a/k/a Claude Dowdell, was originally convicted in the then Criminal Court of Baltimore of rape in the first degree. He was sentenced to life imprisonment. That sentence was, moreover, consecutive to other sentences that had previously been imposed upon other convictions. We affirmed the rape conviction in an unreported *per curiam* opinion, *Dowdell v. State,* No. 1528, September Term, 1979, filed November 30, 1980. The Court of Appeals denied *certiorari.* 289 Md. 735 (1981).

Dowdell subsequently filed a petition for post-conviction relief. Among numerous other allegations, he claimed that he had been denied "effective assistance of counsel." As Chief Judge Gilbert described in our subsequent reported decision of *State v. Dowdell,* 55 Md.App. 512, 464 A.2d 1089 (1983), that post-conviction proceeding was heard before then Judge William H. Murphy, Jr. In an "Opinion and Order" dated May 4, 1983, Judge Murphy stated that Dowdell had been "denied a fair trial by the incompetence of his trial counsel." As we pointed out in our reported *State v. Dowdell,* however, the critical order was not received by the clerk's office until May 12, 1983, and Judge Murphy had resigned from the bench at noon on the preceding May 4. The decision by Judge Murphy was, therefore, a nullity and we remanded the case for further proceedings.

The present post-conviction petition was filed and a hearing was held by the Circuit Court for Baltimore City on September 18, 1984. Counsel for Dowdell and the State stipulated that the record before former Judge Murphy would constitute the evidence upon which the present post-conviction petition would be decided.

The claim of ineffective assistance was a narrow one. The jury trial of the rape case began on November 2, 1979. David Eaton, Esquire, was assigned the case by the Public

Defender's Office on October 24, 1979, eight days before trial. He interviewed Dowdell on that very day and was informed by his client of an alibi defense. The claimed ineffectiveness of assistance is that counsel did not more aggressively and successfully pursue a postponement of the trial date to allow the defense more time to substantiate the alibi.

In terms of trying to substantiate it, the alibi had a very phantom, will-o'-the-wisp quality. Dowdell had successfully escaped from the Jessup Correctional Facility on May 26, 1978, the day before the rape in question. Dowdell informed Mr. Eaton that as part of the escape, he had gotten a ride to Washington, D.C. with visitors from the Jessup facility; the names of those visitors were not furnished. Dowdell claimed that he spent the night in a hotel in Washington, but he was unable to remember the name or the location of the hotel. Dowdell claimed that on the following day (the day of the rape), he purchased an American Airlines ticket under an assumed name and flew to Chicago between 3 and 4 P.M.; he could not remember the assumed name under which he allegedly purchased the ticket. He claimed that he travelled from Chicago to Gary, Indiana to visit his family; he did not furnish the names or addresses of the family members he allegedly visited. There was a decidedly elusive quality to the alibi.

Nonetheless, Mr. Eaton persevered. On the morning of trial, he sought a postponement from the Administrative Judge, Robert L. Karwacki. He informed Judge Karwacki of the status of defense preparations and the reason for requesting the postponement. Judge Karwacki denied the request. Mr. Eaton renewed the request for postponement before Judge David Ross, who was to preside at the trial on the merits. In support of his request, Mr. Eaton made the following proffer:

"Your Honor, at this time I would like to place certain matters on the record with regard to the defense and preparation thereof, and in connection with this case. I received this case for trial on October 24th, and was

notified that it was scheduled for trial today, which is November 1, 1979. On October 24th, I went to the Baltimore City Jail and interviewed the defendant, Mr. Dowdell. Mr. Dowdell indicated to me that a defense he wished to raise was in the nature of an alibi defense, and the scope of that defense placed him in another city, and also placed him upon one of the national airlines during that time, which would have made it impossible for him to have been in the City of Baltimore for the commission of these offenses.

After receiving that information from Mr. Dowdell, my assistant, Jeanette Phillips, has made contact with that airline and has proceeded with the procedure of checking the airline to find out if a ticket was purchased at the time and place mentioned to me by the defendant so that such information can corroborate the alibi defense of the defendant.

In addition to that, the defendant has indicated that on the night before the alleged offense, he spent the night in a hotel in another city, and we are in the process of attempting to verify the fact that he was in another city on the night before.

Now these investigations are still underway and the airline has indicated to my assistant, Ms. Phillips, that it would need a minimum of 10 days to two weeks to procure the necessary information.

For that reason, we are not prepared for trial at this time, and [accordingly] I put in a request for postponement—continuation of the case to give me time to obtain that information. The postponement request was denied by Judge Karwacki and at this time, in view of the fact that I am not fully prepared for trial, and in view of the seriousness of this case, I would ask this court to grant a continuance in order to give us a chance to obtain the necessary documents from the airline and from the hotel."

Judge Ross denied the request for a continuance. He gave as his primary reason for the denial the fact that the

same request had been before the administrative judge earlier that day and had been denied.

In his post-conviction memorandum and order, the hearing judge found counsel's performance to have been inadequate because "it is clear that counsel not only erred preparing and presenting this postponement request, he failed to effectuate a record from which the appellate court could determine the facts involving the postponement request." The judge went on to find that the failure to obtain a postponement and the consequent inability to substantiate the alibi defense "was tantamount to no defense." In terms of prejudicial effect, the hearing judge concluded, "It is impossible to say what effect, if any, the evidence referred to would have had upon the ultimate verdict. But it was so interrelated to the critical issues that its absence due to lack of preparation deprived the Petitioner of a fair trial."

We reverse. We hold that the judgment of the post-conviction hearing judge was erroneous in several different regards, any one of which would mandate the reversal.

### The Procedural Flaw

In the first place, the wrong test was used for measuring ineffective assistance of counsel. The test used by the court was not the now clearly controlling test according to *Strickland v. Washington* but a pre–*Strickland* test, now obsolete, articulated by this Court in *Ward v. State*, 52 Md.App. 88, 447 A.2d 101 (1982). In *State v. Tichnell*, *supra*, the Court of Appeals reversed a similar finding of ineffective assistance for precisely the same procedural flaw. After contrasting in some detail the distinction between the *Strickland* test and the pre-*Strickland* standard of *Ward v. State*, Chief Judge Murphy noted, at 306 Md. 450, 509 A.2d 1190:

"In so concluding, the post conviction court, while citing *Strickland*, made no analysis of the constitutional standards set forth in that case for determining whether counsel rendered ineffective assistance to Tichnell. In-

stead, it relied upon the pre–*Strickland* cases of *Ward v. State*, ... and *State v. Lloyd* [48 Md.App. 535, 429 A.2d 244 (1981) ], ... as containing the law applicable to Tichnell's claim of ineffective assistance of counsel." (Citations omitted).

The performance of counsel in this case was measured according to a legal standard which is no longer controlling.

### The Strickland Test

■ The *Strickland* test itself is very straightforward. It states that a reversal on the grounds of ineffective assistance is not appropriate unless the defense has carried the burden of showing *both* 1) a deficient performance *and* 2) prejudice to the defense. Justice O'Connor stated the test, for the Supreme Court, at 466 U.S. 687, 104 S.Ct. 2064:

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.

Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."

Our Court of Appeals first recognized the *Strickland* test in *Harris v. State*, 303 Md. 685, 496 A.2d 1074 (1985). In an excellent analysis by Judge Orth, it stressed the burden on a petitioner, claiming ineffective assistance of counsel, to satisfy both prongs of the test. Conversely, a reviewing court is relieved of a responsibility to make both measure-

ments if it becomes clear that the petitioner's claim fails to measure up by either standard. Judge Orth pointed out, at 496 A.2d 1079:

"The defendant must show that:

(1) counsel's performance was deficient, *and* [emphasis in original]

(2) the deficient performance prejudiced the defense.

The defendant must make both showings. Otherwise, 'it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.' *Id.* [104 S.Ct.] at 2064. *Strickland* suggested that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.' *Id.* [104 S.Ct.] at 2069–2070. The Court noted: 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course shall be followed.' *Id.* [104 S.Ct.] at 2070. Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact. *Id.*"

### The Standard of Appellate Review

The Court of Appeals in *Harris v. State* also made it indisputably clear that when an appellate court reviews a decision by the trial court on the issue of ineffective assistance of counsel, the appellate court will not apply either the "clearly erroneous" or the "abuse of discretion" standard. Rather than using either of those deferential standards of review, the appellate court will, on the ultimate mixed question of law and fact, make an independent constitutional appraisal of its own. As the Court of Appeals described this test, at 303 Md. 697–698, 496 A.2d 1080:

"When a claim is based upon a violation of a constitutional right it is our obligation to make an independent constitutional appraisal from the entire record.... But this Court is not a finder of facts; we do not judge the credibility of the witnesses nor do we initially weigh the

evidence to determine the facts underlying the constitutional claim. It is the function of the trial court to ascertain the circumstances on which the constitutional claim is based. So, in making our independent appraisal, we accept the findings of the trial judge as to what are the the underlying facts unless he is clearly in error. We then re-weigh the facts as accepted in order to determine the ultimate mixed question of law and fact, namely, was there a violation of a constitutional right as claimed." (Citations omitted).

In the present case, there were no first-level questions of fact in dispute. What Mr. Eaton did and when he did it is not in issue. The only thing in issue is what conclusions the hearing judge drew from those first-level facts. Making our own independent appraisal of those facts, we must determine for ourselves whether the standards set forth in *Strickland* were established.

### *Reasonable Effectiveness of Assistance*

■ *Strickland* pointed out that "the proper standard for attorney performance is that of reasonably effective assistance." 466 U.S. at 687, 104 S.Ct. at 2064. The test by no means demands perfection or freedom from error. Its only concern is whether counsel was "a reasonably competent attorney" and his advice "within the range of competence demanded of attorneys in criminal cases." *Id.* "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." 466 U.S. at 688, 104 S.Ct. at 2065.

■ We find nothing remotely approaching error in the performance of Mr. Eaton in this case, let alone a failure to measure up to the reasonable or normal standard prevailing in the criminal courts of Baltimore City. Indeed, had Mr. Eaton made the determination not even to pursue what strikes us, exercising our independent constitutional appraisal, as this will-o'- the-wisp alibi, we would be hard pressed to find error even there. As *Strickland* pointed out, at 466 U.S. 691, 104 S.Ct. 2066:

"[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable."

*See also State v. Calhoun,* 306 Md. 692, 732–734, 511 A.2d 461, 481–482 (1986).

In this case, however, Mr. Eaton proceeded diligently to run down every possibility of substantiating the alibi, notwithstanding the utter failure of Dowdell to furnish him any meaningful lead or to provide him any assurances of credibility.

The hearing judge seemed to blur together two distinct issues. Even assuming a flagrant error in failing to grant a postponement that would have been devastating to the defense (a situation not obtaining here), that would have been an error committed by the administrative judge. There is no such issue in this case. The erroneous failure of a judge to grant postponement by no means implies professional dereliction in the attorney who sought the postponement.

Mr. Eaton properly presented his case for a postponement to the administrative judge prior to the commencement of the trial. Although we have no transcript of that proceeding, we have Mr. Eaton's testimony that he informed Judge Karwacki of the status of defense preparations and the grounds for requesting the postponement. We have, moreover, the very full and articulate statement in support of a requested postponement that was made no more than an hour or two later before Judge Ross. We have every reason to infer that what was said before Judge Ross was essentially what was said before Judge Karwacki. There was nothing remotely inadequate about that presentation.

Even with the request fully articulated, Judge Karwacki and Judge Ross may well have been as disdainfully skeptical of the proffered alibi as we frankly are. That alone could well have accounted for the court's reluctance to disrupt the trial machinery and to inconvenience the State's

witnesses in the pointless pursuit of an ephemera. Such a conclusion would have overridden the most eloquent plea on the part of defense counsel to engage with Samuel Taylor Coleridge in "the willing suspension of disbelief."

The hearing judge's fall-back position seemed to be that even if Mr. Eaton had not been deficient in his pursuit of the postponement proper, he was deficient in not making certain that his colloquy with Judge Karwacki was properly memorialized for subsequent review. Our independent appraisal is quite to the contrary.

Since *Strickland* speaks of "error" within the contemplation of an adverse impact on the fairness of a trial, we seriously doubt that the failure to preserve a record for appellate review comes within *Strickland*'s ambit. In any event, we see nothing in this regard that would indicate that Mr. Eaton's performance fell below the reasonable professional standard prevailing in the criminal courts of Baltimore.

Mindful of the general attitudinal approach that we are enjoined by *Strickland* to bring to bear on these issues, we admonish the trial bench not to reach out loosely and cavalierly to find instances of ineffectiveness but to save that severe stricture for the flagrant lapses that really call for it. As *Strickland* reminded us, at 466 U.S. 690, 104 S.Ct. 2066:

> "The availability of intrusive posttrial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense."

Chief Judge Murphy spoke to a similar effect in *State v. Tichnell*, at 306 Md. 443, 509 A.2d 1187:

> "In *Harris*, we noted *Strickland*'s observance that the object of an ineffectiveness claim is not to grade counsel's performance but rather courts should strive to ensure that ineffectiveness claims not become so burdensome to

defense counsel that the entire criminal justice system suffers as a result."

*The Prejudice Factor*

The second prong of the *Strickland* test—the necessity of showing actual prejudice resulting from counsel's performance—is an even more imposing obstacle for the claimant to overcome. "[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." 466 U.S. at 692, 104 S.Ct. at 2067. "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." 466 U.S. at 693, 104 S.Ct. at 2067.

■ Far from an affirmative showing of prejudice and an affirmative finding of prejudice in this case, the conclusion of the court below rested on sheer speculation. The conclusion of the court was, "It is impossible to say what effect, if any, the evidence referred to would have had upon the ultimate verdict." Even if we were refraining from making our own independent appraisal, we would find the court's conclusion flawed for that reason alone. The *Strickland* test makes clear that a mere possibility that an error had some conceivably adverse effect on the defense is not enough:

> "Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense.
>
> It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, ... and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." (Citation omitted).

466 U.S. at 693, 104 S.Ct. at 2067. What is required is an affirmative conclusion that the result of the proceeding would probably have been different, absent the error:

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

466 U.S. at 694, 104 S.Ct. at 2068.

■ *A fortiori,* when we make our own independent appraisal of the prejudice factor, it is not remotely there. We would have to find that a postponement, denied only because of counsel's ineptitude in seeking it, would have provided sufficient time for further preparation which would have produced actual evidence which would probably have caused a different result in this case. To this very day, we have seen no suggestion as to what that evidence might have been.

There is as yet no suggestion that the unidentified hotel in Washington where Dowdell allegedly spent the night of May 26, 1978 has been located. As numberless commuters can attest, sleeping in Washington the night before would by no means preclude presence in Baltimore the day after. There is as yet no suggestion that the assumed name under which Dowdell allegedly flew to Chicago at approximately 3 P.M. on May 27 has been ascertained. A 3 P.M. departure from National Airport, moreover, would not have precluded presence in Baltimore earlier that day or even earlier that afternoon.

The only thing the investigator from the Public Defender's Office turned up was sworn statements from some of Dowdell's relatives in Indiana that he was with them in Indiana from May 24 to May 26, 1978. Our own independent appraisal is that the inability to present such testimony was the best thing that ever happened to Dowdell or to his Indiana relatives. According to his own statements, he never flew west to Chicago until May 27, three days after

his alibi witnesses placed him there. Even more damning to him and to them would have been the demonstrable proof that he was safely ensconced in the Jessup Correctional Facility during all of May 24, during all of May 25, and during much of May 26. Whether an embarrassing mistake or a deliberate perjury, the testimony would have hurt rather than helped the appellee's cause. We not only see no prejudice, we see an actual avoidance of prejudice.

Accordingly, the judgment of the post-conviction hearing judge is hereby reversed and Dowdell's criminal convictions are hereby reinstated.

JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEE.