STATE of Iowa, Appellee,

v.

Mark Paul HISCHKE, Appellant.

No. 00–1924.

Supreme Court of Iowa.

Jan. 24, 2002.

Linda Del Gallo, State Appellate Defender, and Shellie L. Knipfer, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary E. Tabor, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Randall Jackson, Assistant County Attorney, for appellee.

STREIT, Justice.

Mark Hischke made an eleventh-hour decision to deny possession of marijuana after previously admitting to the police and his lawyer the marijuana belonged to him. Hischke's trial counsel, John Bishop, informed the court Hischke intended to commit perjury. After a jury trial, the court convicted Hischke of possession of marijuana. Hischke appeals contending he was denied effective assistance of counsel when his trial lawyer alerted the court to his "personal belief" Hischke planned to present perjured testimony. Because we find Bishop had good cause to believe Hischke's proposed testimony would be deliberately untruthful, we affirm.

## I. Facts

On December 5, 1999, Waterloo police officers executed an arrest warrant on Eric Twesme at his apartment. When the officers arrived, Twesme and Mark Hischke were present in the apartment. Twesme answered the door and permitted the officers to enter. In the apartment, the officers saw syringes, spoons, and cotton. The officers asked Hischke to wait in the hallway where he consented to a search of his person. The officer discovered a syringe in Hischke's shirt pocket. Before going to the police station, Twesme asked the officers for a jacket. One of the officers saw a leather jacket in the apartment draped over the back of the chair where Hischke had been sitting. The officer asked Twesme if the jacket was his and Twesme said it did not belong to him. Hischke admitted ownership of the jacket but said he was not responsible for anything in the pockets. During a consent search, the police officer found a small bag of marijuana in the jacket.

Mark Hischke was charged with possession of marijuana in violation of Iowa Code section 124.401(5) (Supp.1999). On the day the trial was scheduled to begin, Hischke's attorney, John Bishop, moved to withdraw from the case. Bishop stated his client initially claimed ownership of the marijuana but shortly before the trial Hischke denied ownership. Bishop explained to the court,

> It's my personal belief that Mr. Hischke's original statements to me that the marijuana was his was the truth, and if Mr. Hischke requires me to present evidence otherwise I think I would be presenting perjured testimony, and so I don't feel I can ethically be permitted to do that. But Mr. Hischke wishes to present that defense and that's, I guess, the dilemma we have here.

The district court informed Hischke he would not be permitted to testify as to the ownership of the marijuana.[1] Hischke declined to testify and the jury found him guilty as charged.

On appeal, Hischke contends he was denied effective assistance of counsel when Bishop informed the court he believed his client was going to present perjured testimony. Hischke argues it is not sufficient for an attorney to merely "believe" a client intends to commit perjury. Hischke asks us to adopt a standard that requires an attorney to have "actual knowledge" the client's testimony will be false. Hischke argues prejudice should be presumed.

The State contends an attorney need only have a "firm factual basis" for believing a client plans to lie before taking any measures designed to prevent such perjury. The State argues Bishop satisfied this standard.

## II. Scope of Review

We review claims of ineffective assistance of counsel de novo. *State v. Belken*, 633 N.W.2d 786, 794 (Iowa 2001) (citing *State v. DeCamp*, 622 N.W.2d 290, 292 (Iowa 2001)). Ordinarily, we prefer to leave ineffective assistance of counsel claims for postconviction relief proceedings. *State v. Lopez*, 633 N.W.2d 774, 785 (Iowa 2001) (citing *State v. Ceron*, 573 N.W.2d 587, 590 (Iowa 1997)). We will review such claims on direct appeal if the record is clear and trial counsel's actions cannot be explained by plausible strategic or tactical considerations. *Id.*

## III. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, Hischke must demonstrate both ineffective assistance and prejudice. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001) (citations omitted). Both elements must be proven by a preponderance of the evidence. *Id.* If a claim lacks one of the elements of an ineffective assistance of counsel claim, it is not necessary for us to address the other element. *Id.*

Hischke must first prove Bishop's performance was not within the normal range of competence. *State v. Gant*, 597 N.W.2d 501, 504 (Iowa 1999). We measure the attorney's performance by standards of reasonableness consistent with "prevailing professional norms." *Ledezma*, 626 N.W.2d at 142 (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694 (1984)). We begin our analysis with the presumption Bishop performed competently. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–95. Claims of

---

1. We do not rule on the appropriateness of the trial court's response because Hischke did not appeal this issue. For the same reason, we do not rule on the appropriateness of trial counsel's reaction to the court's indication that Hischke would not be allowed to testify.

ineffective assistance of counsel are more likely to be found where counsel lacked diligence as opposed to the exercise of judgment. *Ledezma*, 626 N.W.2d at 142 (citing 3 Wayne R. LaFave et al., *Criminal Procedure* § 11.10(c), at 714 (2d ed.1999)).

 Bishop believed his client planned on committing perjury. Trial counsel may not knowingly present perjured testimony. *See Nix v. Whiteside*, 475 U.S. 157, 174–75, 106 S.Ct. 988, 998, 89 L.Ed.2d 123, 139–40 (1986); Iowa Code Prof'l Resp. DR 7–102(4), 7–102(7). When counsel knows a client has committed perjury or plans on doing so, counsel may reveal the perjury to the court. *Nix*, 475 U.S. at 174, 106 S.Ct. at 998, 89 L.Ed.2d at 139; Iowa Code Prof'l Resp. DR 4–101(A). On this appeal, we must determine whether Bishop performed competently and reasonably in deciding to inform the court his client intended to present perjured testimony.

 The central issue before us is what standard of knowledge is required before a lawyer may inform the court of his or her client's plan to commit perjury. There are several factors to consider in making this determination: (1) how certain counsel was the proposed testimony was false; (2) at what stage of the proceedings counsel discovered the plan; and (3) the ways in which the attorney may be able to dissuade his or her client from committing perjury. *See Nix*, 475 U.S. at 188–89, 106 S.Ct. at 1005, 89 L.Ed.2d at 148–49.

Other jurisdictions have addressed the standard to be applied when a lawyer informs the court his or her client intends to commit perjury. Some courts require a lawyer to have knowledge "beyond a reasonable doubt" before disclosing to the court the belief a client is planning on committing perjury. *See, e.g., Shockley v. State*, 565 A.2d 1373, 1379 (Del.1989);

*Commonwealth v. Alderman*, 292 Pa.Super. 263, 269, 437 A.2d 36, 39 (1981). Other courts have adopted the "firm factual basis" standard. *See, e.g., United States v. Long*, 857 F.2d 436, 445 (8th Cir.1988) ("clear expression of intent to commit perjury" is required before a lawyer may alert the court); *U.S. ex rel. Wilcox v. Johnson*, 555 F.2d 115, 122 (3d Cir.1977); *State v. James*, 48 Wash.App. 353, 367, 739 P.2d 1161, 1169 (1987). Another court requires a "good faith determination" by counsel the defendant will commit perjury when he testifies. *People v. Bartee*, 208 Ill.App.3d 105, 107–08, 153 Ill.Dec. 5, 566 N.E.2d 855, 857 (1991). Certain other courts require counsel to engage in an independent investigation of the facts before determining the defendant's anticipated testimony will constitute perjury. *See, e.g., State v. DeGuzman*, 68 Haw. 14, 17, 701 P.2d 1287, 1291 (1985); *People v. Schultheis*, 638 P.2d 8, 11 (Colo.1981). *But see State v. Lloyd*, 48 Md.App. 535, 546, 429 A.2d 244, 250 (1981) (lawyer's decision not to call alibi witness to testify was justified where lawyer was convinced alibi witness would commit perjury); *Alderman*, 437 A.2d at 39 (it was not necessary for lawyer to conduct independent investigation of facts where lawyer knew beyond a reasonable doubt certain witness would perjure himself if called to testify and defendant's change of story was implausible).

 We have not addressed this particular issue in Iowa since 1978. At that time, we addressed this issue within the context of a case with factual circumstances very similar to the case before us. *See State v. Whiteside*, 272 N.W.2d 468, 470 (Iowa 1978). In *Whiteside*, the lawyer relied on the defendant's pronouncement shortly before trial that was inconsistent with his story during the initial phases of the proceedings. In asserting self-defense the defendant initially claimed he

"thought" the victim had a gun but he did not actually see the gun. Then, before trial, the defendant told counsel he intended to testify he did see a gun because without such testimony he was "dead." *Id.* at 471. We concluded a lawyer is required to be convinced with good cause to believe the defendant's proposed testimony would be deliberately untruthful. *Id.* Moreover, the lawyer was not required to conduct an independent investigation of the facts before determining his client planned to commit perjury. We reaffirm our holding in *Whiteside*.

We now turn to the facts before us to determine whether Hischke was denied effective assistance when Bishop alerted the court to Hischke's plan to testify falsely. These are the relevant facts as they occurred before Hischke's change in story. Immediately before Hischke's arrest, he told the police officers he owned the leather jacket but was not responsible for anything inside the pockets. This statement indicates Hischke was aware the officers would find something illegal in the jacket. Consistent with Hischke's declaration of ownership, Twesme told the police officers the leather jacket did not belong to him. Hischke then wore the leather jacket to the police station. During his initial contact with Bishop, Hischke stated the jacket belonged to him.

Shortly before the trial was scheduled to begin, Hischke learned of the enhanced sentence that would accompany his third conviction on a charge of possession of marijuana. At this time Hischke changed his testimony and told Bishop the jacket did not belong to him. Hischke claims he had only been taking "the rap" for his friend Twesme but would no longer do so because of the enhanced punishment Hischke faced. This statement is questionable because of its lateness.

In addition to the facts above, other factors contributed to Bishop's objectively reasonable basis for believing Hischke intended to commit perjury. The police officers found a syringe in Hischke's shirt pocket when they patted him down outside of the apartment. Hischke was visiting a friend who had an outstanding warrant for selling morphine and who lives in an apartment openly littered with drug paraphernalia. As stated above, this was not Hischke's first brush with the law. He has two prior marijuana convictions.

Given these facts, we find Bishop performed competently and reasonably in deciding to inform the court of Hischke's recent change in testimony. Bishop's belief was reasonable under these circumstances. He did not merely suspect or guess Hischke would commit perjury. The facts do not support a finding it was simply Bishop's "gut-level belief" Hischke planned to commit perjury. *See James,* 739 P.2d at 1169. Moreover, his decision to act on this personal belief is entirely consistent with "prevailing professional norms." *Ledezma,* 626 N.W.2d at 142 (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694). Bishop was "convinced with good cause to believe defendant's proposed testimony would be deliberately untruthful." *Whiteside,* 272 N.W.2d at 471. Further, it was not necessary for Bishop to conduct an independent investigation of the facts.

We decline to adopt the standard of "actual knowledge" suggested by Hischke. Such a standard would be virtually impossible to satisfy unless the lawyer had a direct confession from his or her client or personally witnessed the event in question. Consequently, the standard of actual knowledge would eviscerate the rules of professional responsibility forbidding a lawyer from presenting perjured testimony.

In finding Bishop's performance was within the normal range of competence we are not stating Bishop was required to take the particular course of action he chose to pursue. This has not been presented to us. We recognize when counsel is faced with the situation of client perjury, he or she has competing interests at stake. Counsel must contend with duties of zealous advocacy, confidentiality, and loyalty to the client. On the other hand, these interests are counter-balanced by duties of accountability to the courts and justice. In order to accommodate these competing interests, there are various appropriate options a lawyer may choose among to decide how to handle such a situation. *See* Model Rules of Prof'l Conduct R. 3.3 (1999).

## IV. Conclusion

We conclude Hischke's trial counsel acted reasonably when he informed the court his client intended to commit perjury. Hischke satisfied the requisite standard that a lawyer must be "convinced with good cause to believe the defendant's proposed testimony would be deliberately untruthful." Because we find Hischke was not denied effective assistance of counsel, we do not address whether Hischke has demonstrated prejudice. We affirm.

**AFFIRMED.**

All justices concur except CARTER, J., and LAVORATO, C.J., who concur specially.

CARTER, Justice (concurring specially).

I concur in affirming defendant's conviction.

This case vividly illustrates the difficulty in determining whether a lawyer has a sufficiently convincing reason to believe a client is about to commit perjury. I have no disagreement with the test, which the opinion of the court employs for making such determinations consistent with the lawyer's ethical obligation. Nor do I question the conclusion of defendant's counsel in the present case in the face of that test. The decision could have gone either way on these facts.

This case does not discuss, because the issue is not raised, whether the action that defendant's counsel took upon becoming convinced of the impending perjury was proper. I am convinced that it was not. My disagreement with defense counsel's action flows from a belief that it is never proper for counsel to advise the court that counsel believes a client will testify falsely. Such conduct will inevitably damage the client's case beyond repair.

Counsel who reach the conclusion that a client is about to testify falsely should first attempt to dissuade the client from giving the offending testimony. If unsuccessful, counsel should attempt a quiet withdrawal from the representation. The reasons set forth in the application to withdraw should only identify the existence of an unspecified attorney-client disagreement that might compromise the attorney's ethical responsibilities. At no time should the matter of impending perjury be disclosed. If the attempt to withdraw fails, then counsel should proceed with the case and conduct any questioning of the witness so as not to invite the suspected perjury. If the suspected perjury nonetheless occurs, counsel should make no reference of it in arguing the case to the trier of fact. I believe that if a lawyer proceeds in this manner, he or she may fully satisfy the lawyer's ethical obligation to prevent perjury without the necessity of advising the court as to the client's intent to testify falsely.

Lavorato, C.J., joins this special concurrence.