# IN THE SUPREME COURT OF IOWA

No. 20–0359

Submitted March 24, 2022—Filed June 17, 2022

**STATE OF IOWA,**

    Appellee,

vs.

**WALTER LEE MILLER JR.,**

    Appellant.

___

On review from the Iowa Court of Appeals.


Appeal from the Iowa District Court for Scott County, Henry W. Latham II, Judge.


A defendant appeals his convictions, arguing the district court erred by granting his appointed counsel's motion to withdraw and by concluding the defendant waived his right to counsel. **DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**


Christensen, C.J., delivered the opinion of the court, in which all justices joined. Appel, J., filed a concurrence.

Thomas Hurd (argued) of Law Office of Thomas Hurd P.LC., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Martha E. Trout (argued) and Israel Kodiaga, Assistant Attorneys General, for appellee.

**CHRISTENSEN, Chief Justice.**

The district court granted defense counsel's motion to withdraw from representation of the defendant about three weeks before the defendant's speedy trial expiration date after defense counsel declared further representation of the defendant would result in counsel's violation of our professional rules or other laws. Although the district court offered to appoint another attorney to represent the defendant, the defendant insisted on representing himself with the assistance of standby counsel. After conducting colloquies at the withdrawal hearing and again immediately prior to the start of trial, the district court concluded the defendant knowingly, intelligently, and voluntarily waived his right to counsel and allowed the defendant to proceed pro se with the assistance of standby counsel.

A jury convicted the defendant on three charges. On appeal, the defendant, argues the district court abused its discretion by granting defense counsel's motion to withdraw and erred in concluding the defendant knowingly, voluntarily, and intelligently waived his right to counsel. We transferred the case to the court of appeals, which affirmed the defendant's convictions.

On further review, we also affirm the defendant's convictions. The district court did not abuse its discretion by granting defense counsel's motion to withdraw based on defense counsel's statements that professional considerations required termination of the representation. Additionally, the district court correctly concluded the defendant knowingly, intelligently, and voluntarily waived his right to counsel after engaging in a thorough colloquy.

## I. Background Facts and Proceedings.

On August 23, 2019, police officers responded to a disturbance call in Davenport with reports that Walter Miller Jr. assaulted another man with a machete. The victim and witnesses reported Miller left the scene "in a silver Crown Victoria shaped vehicle" to return to his home, where the officers subsequently arranged a perimeter and conducted a traffic stop on the vehicle behind Miller's residence. The search of Miller's vehicle pursuant to the stop revealed approximately fifteen grams of methamphetamine. Miller made his initial appearance the next day on three criminal complaints: possession of a controlled substance with intent to deliver, failure to affix a drug stamp, and assault while displaying a dangerous weapon. At Miller's request, the district court appointed defense counsel, and that counsel filed an appearance on Miller's behalf and waived the preliminary hearing on August 26.

The State formally charged Miller by trial information on September 17 with possession of methamphetamine with intent to deliver, third or subsequent offense, in violation of Iowa Code section 124.401(5) (2019), failure to affix a drug tax stamp in violation of section 453B.12(2), assault while displaying a dangerous weapon in violation of section 708.2(3), and willful injury causing serious injury in violation of section 708.4(2). On September 18, Miller entered a written arraignment and demanded his right to speedy trial. During a pretrial conference on October 4, a final pretrial conference was set for November 27 and trial was set for December 2 with a notation that speedy trial required the trial to be held by December 16, 2019.

On November 19, Miller's defense counsel filed a motion to withdraw representation. In relevant part, the motion stated,

2. Further representation of Defendant would result in me violating the Iowa Rules of Professional Conduct and/or other laws. I cannot be more specific without violating attorney–client privilege.

3. I have tried unsuccessfully to resolve the issue.

4. I am therefore required to withdraw from further representation of Defendant pursuant to Iowa Rule of Professional Conduct 32:1.16(a)(1).

The district court held a hearing on this motion on November 26. Defense counsel reiterated what he stated in his motion to the district court, and the district court asked Miller if he had "any objection." Miller responded, "By being so close to trial, what am I supposed to do?" The district court told Miller that the State filed a motion to continue but that the court believed there was "a speedy trial issue." The State countered, asserting that Miller's speedy-trial demand required the trial to be held by December 16 and that the State was "perfectly willing to try [the case] December 9 or 16" but had a witness availability issue on December 2. Miller told the district court, "I don't want to waive my 90 days, if that's what he's saying. No."

The district court explained to Miller that he had a constitutional right to counsel but "based on the colloquy that [the court] . . . had with [Miller's] attorney, [the court] believe[s] [it] ha[s] no choice but to grant his application to withdraw." However, the district court then reversed its ruling on that issue. The court told Miller, "[B]ecause you have the right to have an attorney appointed to represent you, I am willing to appoint another attorney to represent you. Do you

request the appointment of counsel?" Miller replied, "No." The district court asked Miller, "Is it your desire, then, to continue in this matter and represent yourself," to which Miller answered, "Yes."

The district court conducted a *Faretta* colloquy[1] with Miller to determine whether he knowingly, intelligently, and voluntarily waived his right to counsel. During that colloquy, Miller indicated he did not have adequate time to discuss whether he would waive his right to representation with his attorney but also informed the district court that he did not want any time with his attorney to discuss the matter. Instead, he wished to proceed with the waiver of an attorney. The district court also asked then-defense counsel whether he believed it was in Miller's "best interests to waive his right to be represented by an attorney." Defense counsel stated,

> I think Mr. Miller would be happier if he represented himself. I think that he has his own ideas about the best way to try the case, and he feels comfortable it's the best way to do it.
>
> We haven't always agreed on certain things, but in terms of his -- I think he's got the ability to come up with the theory of the case and to argue it and to question witnesses. Whether it's gonna be successfully, I don't know.
>
> But asking me if it's his best interests, I'm not sure how to begin to answer that question. I think Mr. Miller is aware of the risks. He's got a vision for what he wants to do with the case. It's his life. If that's the way he wants to go, then so be it.

---

[1] *Faretta v. California*, 422 U.S. 806, 835 (1975), established what we now call the "*Faretta* colloquy" that a district court must perform to ensure that a defendant is knowingly and intelligently forgoing the traditional benefits associated with the right to counsel by acting pro se.

The district court again asked Miller if it was his "desire to not have an experienced, trained, and licensed attorney represent [him]" and whether he preferred to represent himself. Miller explained, "Well, from what happened today, I mean, about him getting off my case, I wouldn't want it to go any longer than what it's already been, so I decided to represent myself." Miller informed the district court that he had previously represented himself in a past case with the assistance of standby counsel. Miller proceeded to express his complaints about his current defense counsel noting, "I'm not getting nothing that I asked for in my case. I'm not getting my depositions. I'm not getting a certain witness. I'm not getting certain video footage from officers. I mean, it would be the same. I mean, I can do everything myself, I feel." He later explained, "I feel if I go to trial and if I just tell exactly what happened and how everything happened, I feel like I would be free, and that's how I feel."

After the district court continued to warn Miller of the perils of representing himself, Miller requested the assistance of standby counsel. Defense counsel informed the district court that he believed it would still be unethical for him to serve as standby counsel under the circumstances because he would "be in the same ethical situation [he's] in now" if he had to assist Miller during the trial. The district court subsequently asked the prosecutor whether he believed "the matter could be continued to a time within [Miller's] 90-day speedy trial demand and still allow standby counsel to be brought up to speed in this matter, in [his] opinion[.]" The prosecutor answered, "Yeah, I could walk into this case and be standby counsel. It'd just be an issue as to whether standby

counsel was appointed to someone else that has a speedy trial demand on whatever date we're dealing with."

At the conclusion of the hearing, the district court found Miller made a knowing, voluntary, and intelligent decision to represent himself, though the district court also found it "appropriate to appoint standby counsel" and granted the State's motion to continue the trial to December 9. The court indicated it would grant the public defender's motion to withdraw but only after standby counsel was in place.

The next day, November 27, the district court filed a written order granting defense counsel's motion to withdraw and appointing another attorney as standby counsel. Appointed standby counsel entered his appearance that day.

Just before the jury trial commenced on December 9, the district court conducted a second colloquy to ensure Miller was making a knowing, voluntary, and intelligent decision to represent himself. In doing so, the district court asked Miller, "And what are your reasons for not wanting a court-appointed attorney, sir?" Miller said, "I did want one," and elaborated,

> I did have one. He just decided to get off my case right before trial, and I wasn't about to waive my speedy trial, so I had to take it on myself. In so many words, I had a lawyer, an appointed attorney all the way up until it was time to go to trial and he withdrew the other day and he wanted me to waive my 90 days and I decided not to and that's why I'm representing myself.

Nevertheless, Miller reiterated that he was making the decision to represent himself with standby counsel. Standby counsel informed the district court that he "spent time [with Miller] over the past few days . . . going over everything and discussing the fact that -- I think I used the words 'he's running

the show,' I'm just here if he has like a procedure or rule question." The district court ultimately concluded Miller "still [made] a knowing, voluntary, and intelligent decision to represent [himself] in this matter."

The jury convicted Miller of possession of methamphetamine, third or subsequent offense; failure to affix a drug tax stamp; and assault while displaying a dangerous weapon. Miller stipulated to being a habitual offender. The district court sentenced him to a term of imprisonment not to exceed fifteen years for the possession charge, a term not to exceed fifteen years on the drug tax stamp charge, and a term not to exceed two years on the assault charge. The district court ordered the two fifteen-year sentences to run concurrently, while the two-year sentence would run consecutively to the other sentences.

Miller timely appealed, arguing the district court abused its discretion by allowing defense counsel to withdraw so close to his trial date and erred by finding that he knowingly, intelligently, and voluntarily waived his right to counsel. We transferred the matter to the court of appeals, which affirmed Miller's convictions. We granted Miller's application for further review.

**II. Standard of Review.**

We review a district court's ruling on defense counsel's motion to withdraw for abuse of discretion. *State v. Rhode*, 503 N.W.2d 27, 35 (Iowa Ct. App. 1993). An abuse of discretion occurs when the district court's ruling "is based on clearly untenable grounds." *Liquor Bike, LLC v. Iowa Dist. Ct.*, 959 N.W.2d 693, 696 (Iowa 2021) (quoting *NuStar Farms, LLC v. Zylstra*, 880 N.W.2d 478, 482 (Iowa

2016)). We review constitutional claims regarding the right to counsel de novo. *State v. McKinley*, 860 N.W.2d 874, 878 (Iowa 2015).

**III. Analysis.**

Miller presents two arguments on appeal. First, he claims the district court abused its discretion by granting defense counsel's motion to withdraw so close to his trial date. Second, Miller maintains he did not knowingly, intelligently, and voluntarily waive his right to counsel. We address these arguments in turn.

**A. Defense Counsel's Motion to Withdraw.** Miller contends the district court abused its discretion by granting defense counsel's motion to withdraw. Defense counsel cited rule 32:1.16(a)(1) in his motion to withdraw. This portion of the rule provides, "[A] lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: (1) the representation will result in violation of the Iowa Rules of Professional Conduct or other law." Iowa R. Prof'l Conduct 32:16(a)(1). At the hearing on the motion, defense counsel informed the district court that he was "in a situation for professional considerations where withdrawal is mandatory" but could not "be more specific without violating privilege." He reiterated his belief "that continued representation of Mr. Miller through trial would result in my either violating a rule of professional conduct or another law. And [he] attempted to resolve the situation unsuccessfully."

Miller seizes on the district court's statement during the hearing that it had "no choice but to grant his application to withdraw" and maintains this conclusion is incorrect because Iowa Rule of Professional Conduct 32:1.16(c)

permits the district to use its discretion to order representation to continue. Notably, the district court explicitly reversed this statement and reserved the issue for further consideration before providing a written ruling the next day. Rule 32:1.16(c) states, "A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation." *Id.* r. 32:1.16(c).

Miller claims the district court should have "conducted some form of further inquiry to determine whether Miller believed continued representation by his current counsel was possible if the Court ordered it." But, the district court's concern in considering a motion to withdraw representation is not "whether [the client] believed continued representation by his current counsel was possible if the Court ordered it" as Miller contends. "As we see it, the issue has to do with disclosure: the question is whether the trial court should require defense counsel to disclose confidential information when counsel avows that counsel has an ethical conflict requiring withdrawal." *Maricopa Cnty. Pub. Def. Off. v. Superior Ct.*, 927 P.2d 822, 826 (Ariz. Ct. App. 1996). "[S]olicitude for a client's preference for retaining their court-appointed attorney does not preclude disqualification when circumstances require it." *McKinley*, 860 N.W.2d at 880. "There are times when an accused's right to counsel of choice must yield to a greater interest in maintaining high standards of professional responsibility in the courtroom," so the district court may "disqualify counsel if necessary to preserve the integrity,

fairness, and professionalism of trial court proceedings." *State v. Vanover*, 559 N.W.2d 618, 626 (Iowa 1997).

We are not holding that once a defense attorney moves to withdraw, invoking the Rules of Professional Conduct and client confidentiality, the court should grant the motion without further inquiry regardless of the defendant's objections. Nor are we holding that a district court may *not* inquire further when defense counsel moves to withdraw in these situations. Rather, we are simply reiterating the guidance to the district court and attorneys that is already established in the comments to our rules of professional conduct and trusting our district court judges to take the best course of action in each unique situation.

> Comment 3 to rule 32:1.16 provides,
>
> When a lawyer has been appointed to represent a client, withdrawal ordinarily requires approval of the appointing authority. . . . Difficulty may be encountered if withdrawal is based on the client's demand that the lawyer engage in unprofessional conduct. The court may request an explanation for the withdrawal, while the lawyer may be bound to keep confidential the facts that would constitute such an explanation. *The lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient.*

Iowa R. Prof'l Conduct 32:1.16 cmt. 3 (emphasis added). Granted, this comment is not authoritative and uses the term "ordinary" instead of a definitive term like "always." But we rely on these comments to "provide guidance for practicing in compliance with the rules." *Id.* Preamble & Scope [14]. The guidance in comment 3 contradicts Miller's claim that the district court was "required" to inquire further about "whether Miller believed continued representation by his current

counsel was possible if the Court ordered it." Miller's failure to offer any authority to the contrary is also telling.

Ultimately, "attorneys are officers of the court, and 'when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath.' " *Holloway v. Arkansas*, 435 U.S. 475, 486 (1978) (quoting *State v. Brazile*, 75 So. 2d 856, 860–61 (La. 1954)). "The trial court should give great weight to a representation by counsel that there is a[n ethical issue], particularly in the case where the counsel has been appointed by the court rather than retained by the defendants." *State v. Davis*, 514 P.2d 1025, 1027 (Ariz. 1973) (en banc). Though not dispositive, we note that defense counsel who sought to withdraw in this case is an experienced member of the State Public Defender's Office who is well aware of his ethical obligations. *Cf. Iowa Sup. Ct. Att'y Disciplinary Bd. v. Jacobsma*, 920 N.W.2d 813, 819 (Iowa 2018) (explaining that "[y]ears of experience as an attorney can be considered an aggravating factor" in determining an attorney's sanction for misconduct); *GreatAm. Leasing Corp. v. Cool Comfort Air Conditioning, Inc.*, 691 N.W.2d 730, 733 (Iowa 2005) (noting an attorney's experience is a factor for the district court to consider in assessing the reasonableness of attorney fees); *Mathison v. Young*, 333 N.W.2d 477, 480 (Iowa 1983) (en banc) (holding the court must consider certain factors, including an attorney's experience, in determining compensation for court-appointed attorneys in juvenile cases). Unless an attorney seeks guidance from the district court about a potential ethical dilemma in moving to withdraw or the circumstances raise a specific concern, we should trust that our attorneys

know their ethical duties and are acting in good faith when they seek to withdraw to avoid violating their ethical obligations or the law.

In *State v. Hischke*, defense counsel for a defendant charged with possession of marijuana moved to withdraw on the day the trial was set to begin, stating that "his client initially claimed ownership of the marijuana but shortly before the trial . . . denied ownership." 639 N.W.2d 6, 8 (Iowa 2002). Defense counsel informed the court,

> It's my personal belief that Mr. Hischke's original statements to me that the marijuana was his was the truth, and if Mr. Hischke requires me to present evidence otherwise I think I would be presenting perjured testimony, and so I don't feel I can ethically be permitted to do that. But Mr. Hischke wishes to present that defense and that's, I guess, the dilemma we have here.

*Id.* The district court did not grant the motion to withdraw but "informed Hischke he would not be permitted to testify as to the ownership of the marijuana. Hischke declined to testify and the jury found him guilty as charged." *Id.* (footnote omitted). Hischke appealed, claiming he did not receive effective assistance of counsel when defense counsel "informed the court he believed his client was going to present perjured testimony" because counsel did not have actual knowledge that Hischke's testimony would be false. *Id.*

Although Hischke did not contend counsel violated attorney–client privilege by explaining his concerns about his client's intent to perjure himself to the district court, we stressed that our decision was not an affirmation that defense counsel "was required to take the particular course of action he chose to pursue." *Id.* at 11. Instead, we recognized that "when counsel is faced with the

situation of client perjury," there are "competing interests at stake." *Id.* As we explained,

> Counsel must contend with duties of zealous advocacy, confidentiality, and loyalty to the client. On the other hand, these interests are counter-balanced by duties of accountability to the courts and justice. *In order to accommodate these competing interests, there are various appropriate options a lawyer may choose among to decide how to handle such a situation.*

*Id.* (emphasis added). Our decision today recognizes those various options before defense counsel and endorses both defense counsel's ability to choose the most appropriate way to handle the situation based on their firsthand experience with the client and the district court's discretion in choosing whether to inquire further about counsel's reason for moving to withdraw.

Here, defense counsel declared in his motion to withdraw and at the hearing on that motion that professional considerations require termination of the representation but stressed that he could not "be specific without violating attorney–client privilege." He reiterated this again when the district court asked whether he believed it would be unethical for him to serve as standby counsel, explaining that he would still "be in the same ethical situation [he's] in now." The district court thoroughly examined the situation and conducted the level of inquiry it believed was best in that situation. We cannot find the district court abused its discretion by granting defense counsel's motion to withdraw after defense counsel stated that professional considerations required termination of the representation.[2]

---

[2] *See, e.g., State v. Coven*, 340 P.3d 1101, 1104 (Ariz. Ct. App. 2015) ("The Arizona Rules of Professional Conduct provide that a lawyer 'shall withdraw from the representation of a client

**B Miller's Waiver of His Right to Counsel.** Miller argues he did not knowingly, intelligently, and voluntarily waive his right to counsel. In summary, Miller claims his decision to represent himself was not truly voluntary because he was forced to choose between waiving his right to speedy trial or representing himself given the short timeline between defense counsel's motion to withdraw and his scheduled trial date. The Federal and State Constitutions afford

---

if . . . the representation will result in violation of the Rules of Professional Conduct or other law.' Ariz. R. Sup. Ct. 42, ER 1.16(a)(1). Upon filing of such a motion, the trial court must determine whether good cause has been shown before permitting the withdrawal, Ariz. R. Crim. P. 6.3(b), and may request an explanation for the withdrawal. Ariz. R. Sup. Ct. 42, ER 1.16, cmt. 3. The trial court should not condition grant or denial of the request on the attorney's willingness to disclose confidential information, rather '[t]he lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient.' *Id.*" (omission and alteration in original) (citations omitted)); *State v. Pardo*, No. 1409011585, 2015 WL 6509168, at *1 (Del. Super. Ct. Oct. 27, 2015) ("It should not be necessary to disclose confidential information for the Court to full and fairly consider defense counsel's motion to withdraw. The Rules of Professional Conduct expressly address situations in which the request to withdraw may require balancing of the lawyer's obligations to maintain client confidences and to abide by the duty of candor toward the tribunal. As set forth in Comment 3 to Rule 1.16, if defense counsel has concluded that professional considerations require withdrawal, then defense counsel's 'statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient.' "); *State v. Smith*, 773 S.E.2d 114, 120 (N.C. Ct. App. 2015) ("In light of Comment 3's recognition [in the professional rules] that a 'lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient' to permit withdrawal, we cannot conclude that the trial court's decision to accept [counsel's] assertion that his withdrawal was mandatory in light of his professional considerations was an abuse of discretion." (quoting N.C. R. of Prof'l Conduct 1.16 cmt. 3)); *Sims v. Sims*, 623 S.W.3d 47, 58 (Tex. App. 2021) ("We find Hagger's motion and her arguments adequately demonstrate good cause for her to withdraw from the case. We do not agree with Appellant's assertion that the trial court judge's 'fail[ure] to attempt to discover the factual basis of Hagger's claimed "conflict of interest" or the "communication issues" between her and [Appellant] . . . could have been done *in camera*.' Rather, the trial court inquired about the nature of the conflict and Hagger informed the court divulging the facts involved would violate the attorney–client privilege and potentially jeopardize Appellant's case." (alterations and omission in original)); *Sardini Grp., Inc. v. Imperial Pac. Int'l*, 1:20–cv–00007, 2021 WL 6884600, at *2 (D.N. Mar. I. Feb. 12, 2021) ("The Court finds that Hasselback's statements that continued representation in this matter would cause him to violate several ethical obligations trigger mandatory withdrawal under Model Rule 1.16(a) and is sufficient for granting his motion. The Model Rules, its related comments and caselaw support the Court's decision: Hasselback need not be required to provide details, beyond his written motion, to establish that mandatory withdrawal is warranted. Requiring him to specify the basis for his mandatory withdrawal could create the untenable situation of an attorney having to choose between his obligation of candor to the Court and his obligation to maintain his client's confidences.").

defendants the right to counsel at all critical stages, but a defendant may choose to waive this right. *State v. Majeres*, 722 N.W.2d 179, 182 (Iowa 2006). "A proper waiver must be voluntary, knowing, and intelligent." *Hannan v. State*, 732 N.W.2d 45, 52 (Iowa 2007). Accordingly, courts must "engage the accused in a colloquy sufficient to apprise a defendant of the dangers and disadvantages inherent in self-representation" for the defendant to properly waive the right to counsel. *Id.* at 53 (quoting *State v. Stephenson*, 608 N.W.2d 778, 782 (Iowa 2000) (en banc)).

"The degree of inquiry necessary to assure a valid waiver varies with the nature of the offense and the ability of the accused to understand the process." *Stephenson*, 608 N.W.2d at 782. An adequate colloquy examines "the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Hannan*, 732 N.W.2d at 53 (quoting *State v. Cooley*, 608 N.W.2d 9, 15 (Iowa 2000) (en banc)). The district court also must admonish the defendant "as to the usefulness of an attorney at that particular proceeding, and made cognizant of the danger in continuing without counsel." *Id.* (quoting *Cooley*, 608 N.W.2d at 15).

Here, the district court engaged in a thorough colloquy with Miller at the withdrawal hearing and again immediately prior to the start of Miller's trial. Miller points to his answers to the following two questions to support his claim

that he did not knowingly, intelligently, and voluntarily waive his right to counsel:

> THE COURT: Have you had adequate time to discuss with your attorney whether or not you will waive your right to be represented by an attorney?
>
> THE DEFENDANT: No, sir.
>
> . . . .
>
> THE COURT: Have you discussed the trial strategy in this case with your attorney?
>
> THE DEFENDANT: No, sir.

But these statements taken in isolation do not reflect the full extent of the colloquy.

Although Miller indicated he did not have "adequate time to discuss with [his] attorney whether or not [he] will waive [his] right to be represented by an attorney," he also informed the district court that he did not "wish to have some time at [that] point to discuss that matter with [his attorney]" and "wish[ed] to proceed with [his] waiver of attorney." The district court informed Miller at the withdrawal hearing on November 26 that it was willing to appoint another attorney to represent him, but Miller declined the offer.

In both colloquies, the district court adequately advised Miller of the perils of self-representation and the benefits of having an attorney. It also explained the tasks Miller would have to undertake, including "handling cross-examinations of witnesses, objecting to evidence, . . . presenting evidence at trial, and making opening and closing statements at trial." Likewise, the district court discussed the nature of the charges, the punishment, and the rules

that Miller would be subject to in representing himself even though he is not a licensed attorney. After all of this, Miller reiterated his desire to represent himself with only the assistance of standby counsel. He also revealed during the colloquy that he had represented himself in the past with the assistance of standby counsel.

Miller claims he was forced to represent himself because he did not want to waive his right to a speedy trial, but there was adequate time to appoint new counsel. In discussing the appointment of standby counsel, the district court asked the prosecutor if he believed standby counsel could be brought up to speed in Miller's case if the matter was continued to a time within the 90-day speedy trial demand. The prosecutor answered, "I could do it if I was still on the defense bar . . . . Yeah, I could walk into this case and be standby counsel." Miller was in fact able to spend time with standby counsel for a "few days . . . going over everything" leading up to trial. Standby counsel likely could have been prepared to fully represent Miller if Miller had not waived his right to counsel given one of the purposes of standby counsel is "to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *State v. Martin*, 608 N.W.2d 445, 451 (Iowa 2000) (en banc).

At the time of the withdrawal hearing, the trial was scheduled for December 2, six days after the hearing. But the trial was continued to December 9, thirteen days after the hearing, due to a witness availability issue and the speedy trial deadline was not until December 16—almost three weeks after the withdrawal hearing. Thus, there was no "false choice" between waiving

his right to counsel or waiving his right to a speedy trial. "The purpose of a colloquy is to provide fair notice of the obstacles inherent in self-representation before an accused embarks on so perilous an endeavor." *Cooley*, 608 N.W.2d at 16. The district court met that purpose both at the withdrawal hearing and immediately prior to the start of Miller's trial before concluding Miller knowingly, intelligently, and voluntarily waived his right to counsel.

**IV. Conclusion.**

We affirm Miller's convictions for the aforementioned reasons.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur. Appel, J., files a concurrence.

**APPEL, Justice (concurring).**

I agree with the majority based on the specific facts of this case, but I write separately to emphasize that there may be situations where a trial judge should engage in at least a limited inquiry before permitting the withdrawal of counsel on the eve of trial.

We do not know for sure why counsel declared he was required to withdraw nineteen days prior to the speedy trial deadline in this case. If the withdrawal was prompted by a determination of the client to commit perjury, the caselaw provides at least two different approaches. Under the approach of the Colorado Supreme Court in *People v. Schultheis*, the attorney must simply declare that they have an "irreconcilable conflict" with the client, and that is the end of the matter. 638 P.2d 8, 14 (Colo. 1981) (en banc). The approach in *Schultheis* is consistent with comment 3 to Iowa Rule of Professional Conduct 32:1.16, which states, "The lawyer's statement that professional considerations require termination of the representation *ordinarily* should be accepted as sufficient." (Emphasis added.)

Yet, in *Witherspoon v. United States*, the District of Columbia Court of Appeals suggested that when an attorney seeks to withdraw, the trial court should conduct a hearing on the matter. 557 A.2d 587, 588, 591–92 (D.C. 1989); *see id.* at 591 n.2 ("In order to avoid the prejudice to appellant . . . the judge who presides at appellant's trial should be different from the judge who conducts the conflict inquiry."); *see also* Sanjit S. Shah, *The* Witherspoon *Approach: How a*

*Court Should Decide Defense Counsel's Motion to Withdraw When the Accused Insists Upon the Presentation of Perjurious Witness Testimony*, 35 How. L.J. 155, 166–71 (1992) (arguing that the *Witherspoon* approach could better protect a defendant's Sixth Amendment right to representation than the *Schultheis* approach). The posture in *Witherspoon* was different from the posture here in that the record revealed the client wished to call witnesses whom counsel stated would adversely affect his representation. 557 A.2d at 591.

Ordinarily, when counsel files a motion to withdraw well in advance of trial, the *Schultheis* approach may be followed without harm to the client. New counsel may simply be appointed and, perhaps, the problem will be resolved. But when a motion to withdraw is filed close to the speedy trial deadline, the criminal defendant may be forced to choose between representation by counsel and their right to a speedy trial. In this setting, the case can be made that the trial judge should engage in a more searching inquiry in an effort to avoid requiring the defendant to choose between their right to counsel and their right to a speedy trial. Of course, care should be made not to unnecessarily intrude in attorney-client communications, but the district court can enquire about the general nature of the conflict and probe to see if pragmatic alternatives are available that avoid a surrender of the defendant's rights to the assistance of counsel and to speedy trial.

And there might be potential solutions available. For instance, if the counsel's concern is a client potentially committing perjury, the court could have the client testify in the narrative. *See Wilkins v. Scribner*, 263 F. App'x 638, 639–

40 (9th Cir 2008) (holding it was "constitutionally reasonable" to make use of "the 'free narrative' option to avoid ethical problems"). Although Iowa has not yet formally recognized this "free narrative" approach, comment 7 to Iowa Rule of Professional Conduct 32:3.3 seems to suggest the use of free narrative. *See* Iowa R. Prof'l Conduct 32:3.3 cmt. 7 ("An advocate's obligation under the Iowa Rules of Professional Conduct is subordinate to a court's directive requiring counsel to present the accused as a witness or to allow the accused to give a narrative statement if the accused so desires."). Additionally, this approach has been identified by commentators as a possible permissible alternative. *See* 16 Gregory C. Sisk & Mark S. Cady, *Iowa Practice Series Lawyer & Judicial Ethics* § 7:3(d)(1) (2019) (noting that comment 7 to rule 32:3.3 "may indicate tentative acceptance of or at least openness to the [free] narrative approach" and that although the free narrative approach might not be perfect, it is within the trial court's discretion when facing an "impossible situation" in a criminal case).

If the counsel's concern stems from a conflict of interest, the confidential dimension is likely to be significantly less worrisome than in the context of potential client perjury. In *State v. McKinley*, we held that the court must "independently evaluate whether the circumstances show an actual conflict or serious potential for conflict before disqualifying defense counsels." 860 N.W.2d 874, 880 (Iowa 2015) ("A conflict does not exist just because one party asserts it does."). Granted, in *McKinley* it was the defense counsel who requested a hearing on the matter, but the point is we did not stop our inquiry once a potential

conflict of interest has been identified. *See id.* at 877. Instead, we held that the district court must dive deeper.

Another possibility is that withdrawal was based on an irresolvable conflict with the client. In an irresolvable conflict setting, a generalized judicial inquiry to ensure that there is no realistic alternative to withdrawal may be appropriate if withdrawal at the eleventh hour means the defendant must choose between his right to counsel and his right to a speedy trial.

Here, we do not know the basis for the motion to withdraw. It could have been client perjury, a conflict of interest, an irresolvable conflict over strategy, or perhaps some other reason. But the motion to withdraw occurred nineteen days before the expiration of the speedy trial deadline. Although the timing was close, Miller could have had new counsel appointed and proceeded to trial within his speedy trial timeframe. Instead, he voluntarily chose to proceed pro se with the assistance of standby counsel rather than have new counsel appointed for him.

In a situation where defense counsel seeks to withdraw on the eve of trial and where there is no possibility of appointing new counsel prior to the expiration of the speedy trial deadline, we would have a different scenario. At that point, because of the constitutional interests at stake, the district court would be well advised to use a *Witherspoon*-type inquiry to determine whether it is possible to avoid requiring the criminal defendant to choose between his constitutional rights of representation by counsel and speedy trial.

There is, however, one troubling case that is somewhat similar to our present situation, *Howell v. State,* 443 A.2d 103 (Md. 1982). In *Howell,* the

defendant was charged with conspiracy and second-degree murder. *Id.* at 104. The defendant's privately retained counsel moved to withdraw twenty days prior to the trial date on the grounds of nonpayment of fees and because of the possibility that counsel might be called as a witness in a suppression hearing and at trial. *Id.* at 104. The public defender "refused to represent the accused unless he agreed to a postponement." *Id.* at 105.

At a hearing, the trial court advised the defendant that the public defender would not represent him without a postponement and that the trial court did not have the authority or funds to appoint another lawyer who, in any event, would also be unable to prepare for trial on such short notice. *Id.* But the defendant insisted on both his right to counsel and his right to a speedy trial. The trial court responded that the defendant had to choose between his right to a speedy trial and his right to counsel. *Id.* at 106 ("[Y]ou can't have your cake and eat it in this case. You can either have your trial in 120 days, 180 days or, without counsel, or you can have, wait a little while and have counsel appointed for you who will represent you.").

The trial court ultimately determined that the defendant's refusal to agree to a postponement was a knowing and voluntary waiver of the right to counsel. *Id.* The defendant was without counsel at multiple pretrial hearings, including a suppression hearing, and eventually was unrepresented at a four-day trial where a jury convicted him of conspiracy and second-degree murder. *Id.*

On appeal, the Maryland Court of Appeals reversed the conviction. *Id.* at 107. It held that the defendant, under the circumstances, did not waive his right

to counsel. *Id.* The court noted that private counsel's motion to withdraw could have been denied. *Id.* at 107–08. And, the trial court could have appointed other counsel. *Id.* at 108. Or, the speedy trial deadline could have been extended for good cause shown. *Id.*

Here, however, the facts are somewhat different. First, the district court did not advise the defendant that he had to choose between his right to a speedy trial and his right to assistance of counsel. Instead, the district court offered the defendant the appointment of another lawyer, which the defendant declined. At that time, the speedy trial deadline was almost three weeks away. The record does not establish that new counsel was not available to be prepared for trial within the speedy trial deadline. Thus, unlike *Howell*, in this case, there was no showing that the defendant was actually forced to choose between speedy trial and his right to counsel.

In the end, I agree with the result in this case on the narrow facts presented and claims made on appeal. I concur because, as they say in the movies, "it's complicated."